227 N.J. Super. 5 (1988)
545 A.2d 774
JERSEY CITY, MARJORIE WESTLING AND JOHN N. TICHENOR, AND JERSEY CITY PLANNING BOARD PLAINTIFFS-APPELLANTS,
v.
STATE OF NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION, THE LIBERTY STATE PARK DEVELOPMENT CORPORATION, WATERFRONT DEVELOPERS CORPORATION, AND LIBERTY STATE PARK PUBLIC ADVISORY COMMISSION, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued January 6, 1988.
Decided April 25, 1988.
*9 Before Judges KING, GRUCCIO and D'ANNUNZIO.
Frank L. Holstein argued the cause for appellants Jersey City, Marjorie Westling and John Tichenor.
Alan I. Smith argued the cause for appellant Jersey City Planning Board.
Mary Catherine Cuff argued the cause for respondent, Waterfront Developers Corporation (Waters, McPherson, McNeill, Fitzpatrick, attorneys; Mary Catherine Cuff and David A. McPherson, on the brief).
Adrian M. Foley argued the cause for respondent Liberty State Park Development Corporation (Connell, Foley & Geiser, attorneys; Christopher J. Paladino, on the brief).
Burton Weltman, Deputy Attorney General, argued the cause for respondents, Department of Environmental Protection and Liberty State Park Public Advisory Commission (W. Cary Edwards, Attorney General of New Jersey, attorney).
The opinion of the court was delivered by KING, P.J.A.D
This case concerns a dispute over the method of developing a unique public resource, Liberty State Park in New York-New Jersey Harbor. We are here called upon to decide whether the actions of the Executive Branch, performed by the Governor and the responsible agency, the Department of Environmental Protection (DEP), were within the ambit of the authority given them by the Legislature. We conclude that the Executive Branch did not exceed its authority in this circumstance involving *10 the challenged development of a 599-slip marina at Liberty State Park and we affirm.
The plaintiffs appeal from the denial of injunctive relief which they sought when the Department of Environmental Protection (DEP) subleased about 50 acres of Liberty State Park to a private corporation for development into the 599-slip public marina. The plaintiffs contend that the lease violated the Green Acres Land Acquisition Act of 1961, the State Park Forestry and Resources Act of 1983, the Master Plan of Liberty State Park, and the "public trust" doctrine. This case presents the issue of the power of the executive branch to lease public lands to a private corporation as part of the development of a public park.
The concept of public-private cooperative venture has gained favor in recent years because public funds for park development are scarce and private funding often represents the only way to develop a park for public use. The narrow question we face is whether the executive branch of government has exceeded its authority in this instance by leasing park lands to the Liberty State Park Development Corporation to develop a public marina.
For the purposes of this action, we conclude that the corporate and citizen plaintiffs, the City of Jersey City, Marjorie Westling, and John N. Tichenor, have standing to bring this action. The City of Jersey City, as a municipality, is a creature of the State and as such usually cannot challenge the action of the executive branch. Bergen County v. N.Y. Port Authority, 32 N.J. 303, 311 (1960). However, we believe that in the public interest, Jersey City, which initially donated 165 acres for Liberty State Park and which is located adjacent to the park, and its citizens do have a special, regional interest exceeding the general public interest. We have jurisdiction to review this matter under R. 2:2-3(a)(2), as a final decision or action of a state administrative agency.
*11 This is the factual background. In 1965, the City of Jersey City deeded 165 acres to the State which were used to create Liberty State Park. Between 1975 and 1977 more land was acquired for the Park, financed by the Green Acres Land Acquisition Act, N.J.S.A. 13:8A-1-34 ($65 million), and the United States Department of Interior ($20 million). The entire Park is now 1150 acres. In 1977 a Master Plan was developed which provided for picnic areas, open spaces, nature trails, and other amenities.
The Master Plan itself described a large marina project for the South Embankment of the Park and boat slips at the northern end of the Park. The Master Plan stated: "The Waterfront around the Tidewater Basin will be a continuous band of landscaping with areas for sightseeing, trailer camping and picnicking." The Southern Embankment was projected as the site of a "large marina, waterfront restaurant, and picnic areas."
In 1977 Governor Byrne by Executive Order # 53 set up the Liberty State Park Planning Commission to consider community proposals about the Master Plan. In the conclusion to that study, the Commission recommended that the Park be kept as "a green park devoted to unstructured open space needs." Nine hearings were held before the Planning Commission and 95 persons representing 54 organizations appeared to voice opinions about the Master Plan. In 1979, by Executive Order # 74, Governor Byrne set up the Liberty State Park Advisory Commission (Commission) to act as a reviewing body for any public or private proposals for the park. The Advisory Commission had broad advisory powers.
In 1983 the DEP formed an ad hoc committee, the Liberty State Park Action Program, chaired by the Director of Parks and Forestry, to evaluate possible uses for the park. Governor Kean urged that the Park be developed by utilizing a partnership between public institutions and private organizations. The Action Program also recommended that a non-profit corporation *12 be set up to implement Park development. Soon afterwards, Governor Kean announced the formation of the Liberty State Park Development Corporation, a non-profit organization. The Corporation was to undertake the development of the Park and enter into contracts with others to foster that development. Its initial funding of $500,000 was from the State. This has been spent for the initial design phase.
In June 1986, the DEP entered into a contract with the Development Corporation to undertake development of the Park. The Development Corporation itself was not authorized to enter into contracts for development of the Park without written approval of the DEP. On June 18, 1986 the Corporation, after consulting with DEP, issued a request for proposals (RFP) for development of a marina at the northern end of the Park. Four proposals were received by the Liberty State Park Development Corporation. Respondent Waterfront Developers, a private corporation, was selected to develop the marina. Once Waterfront Developers was selected, it began working with the Development Corporation to develop and operate the complex.
On June 12, 1987 the DEP entered into a 25-year lease with the Development Corporation to construct a marina complex on 50.65 acres of the Park. There are provisions for automatic five-year extensions if any sub-lessee exercises its option to extend. The Development Corporation subleased the marina area to Waterfront Developers on the same date. On June 13, 1987 the DEP and the Development Corporation amended their agreement to clarify the fact that DEP would have oversight of any revenues and would be able to audit the Development Corporation.
Waterfront Developers now is proceeding with plans to develop the full-scale marina at the northern end of Liberty State Park. It will have 599 slips which will be rented to the public; almost half of them are large enough to accommodate craft 31 feet or longer. The marina facility will include boat storage *13 and repair, a parking area, and a coffee shop. Of the 50.65 acres, ten will be open to the general public.
On July 9, 1987 two citizens of Jersey City filed this suit against the DEP, the Development Corporation, Waterfront Developers and the Liberty State Park Public Advisory Committee. Jersey City filed a separate action against Waterfront Developers. The plaintiffs requested temporary injunctive relief against implementation of the marina development plan. The plaintiffs claimed generally that (1) recreational and open space deficiencies in Hudson County will be increased by the proposed marina, (2) the project does not conform to Green Acres requirements, (3) the marina is being built in an area not intended for marina development by the Master Plan, (4) the DEP, at the urging of the Governor, has delegated improperly its authority to the Development Corporation in order to expedite development of the Park, and (5) the Public Advisory Commission, which is supposed to act as a community sounding board for any development of the Park, has been circumvented, as have the needs of disadvantaged urban citizens of Hudson County. On August 14, 1987 Judge Humphreys, Assignment Judge of Hudson County, denied the plaintiffs' request for an injunction stopping work on the marina and transferred the actions to the Appellate Division because the plaintiffs were challenging the final decision of a state agency.
Plaintiffs make eight legal contentions on this appeal. They say that: (1) the case should be returned to the Law Division for plenary trial, (2) the DEP's lease of Green Acres property violates the State Park Forestry and Resources Act and the Green Acres Land Acquisition Act and its regulations, (3) the DEP's delegation of governmental power to Development Corporation and Waterfront Developers is unlawful, (4) the DEP's leasing of the land and contiguous waters violates the "public trust" doctrine, (5) the contract and leases violate Art. VIII, § III, par. 3 of the New Jersey Constitution, (6) the proposed development is invalid because of lack of approval by the State House Commission, (7) the contracts, lease and sublease violate *14 public bidding statutes, and (8) the procedures violated the Open Public Meetings Act.

I
Plaintiffs first argue that the case should be remanded to the Law Division for a full factual hearing. We disagree. The lease of a portion of the Park constitutes final agency action. The facts surrounding the controversy are clear. The legal issues are sharply defined. Interested persons have had the chance to present their views to the public officials who made the planning decision through the many public hearings, and other formal and informal avenues. The case is ripe for appellate review. See Frapaul Construction Co. v. Transportation Dept. of N.J., 175 N.J. Super. 84, 90-91 (App.Div. 1980), for the history of the review of agency action under R. 2:2-3(a)(2); see also Township of Montclair v. Hughey, 222 N.J. Super. 441 (App.Div.), leave to app. den. ___ N.J. ___ (1988).

II
We conclude that the appeal should be dismissed as to appellant Jersey City Planning Board because it lacks standing and jurisdiction over the development project. We reject the Planning Board's contention that because a private developer is involved, it has site plan review powers. Generally, local zoning and planning regulations cannot affect the State's authority to carry out public functions for the benefit of all the people of the State, especially on the State's own land. Rutgers v. Piluso, 60 N.J. 142, 152-153 (1972).
Pursuant to the State Park Forestry and Resources Act, DEP has plenary power "to acquire, plan, design, construct, operate and maintain State parks and forests." N.J.S.A. 13:1L-4. The Green Acres Land Acquisition Act also evinces broad State powers for acquisition and development. N.J.S.A. 13:8A-20, 23, 25 and 55. We find no evidence in this record that the State has acted in an "unreasonable fashion so as to arbitrarily *15 override all important legitimate local interests." Rutgers v. Piluso, 60 N.J. at 153. Rather, we conclude that the State has consulted "with the local authorities and sympathetically listen[ed] and give[n] every consideration to local objections, problems and suggestions in order to minimize the conflict as much as possible." Id. at 154.

III
Plaintiffs contend that the DEP, a branch of the executive, exceeded its authority when it leased the 50 plus acres of Liberty State Park to the Development Corporation. Their primary argument is that the lease violated the State Park Forestry and Resources Act, N.J.S.A. 13:1L-1 to -25, L. 1983, c. 324, and the Green Acres Land Acquisition Act, N.J.S.A. 13:8A-1 to -34, L. 1961, c. 45.
The Green Acres Land Acquisition Act was adopted in 1961 to increase the availability of land for public recreation and to conserve natural resources. N.J.S.A. 13:8A-2(a). Bonds were sold to fund the purchase of Green Acres lands. Between 1975 and 1977 over $65 million in Green acres funds were used to purchase land for Liberty State Park. The pertinent section of the Green Acres Land Acquisition Act states:
a. Lands acquired or developed by the State under this act with money from the State Recreation and Conservation Land Acquisition and Development Fund shall not be disposed of or diverted to use for other than recreation and conservation purposes without the approval of the State House Commission. Such approval shall not be given unless the commissioner shall agree to pay an amount equal to the value of such land, as determined by the commission, into said fund. [N.J.S.A. 13:8A-48; emphasis supplied].
The plaintiffs contend that the development of a marina which will provide rental spaces in part for large craft is a diversion from recreational purposes and that § 48 of the Green Acres Land Acquisition Act requires that this diversion must be *16 approved by the State House Commission.[1] We conclude that a presentation of the project to the State House Commission is not statutorily mandated in this case because there has been no diversion from recreational purposes.
The DEP, which controls state parks, is also regulated in the circumstance by the State Park Forestry and Resources Act of 1983. N.J.S.A. 13:1L-1 to -25. The plaintiffs contend that N.J.S.A. 13:1L-8 prohibits the DEP from leasing any Green Acres land. That section states:
The department shall have the authority to sell, lease or exchange any lands or any interest therein, except those lands or interests acquired pursuant to the Green Acres program, for the acquisition of any other lands or interests therein for incorporation into the State park and forest system.
We construe § 8 as limiting the authority of DEP to lease Green Acres lands only if this is done for the acquisition of other lands and if the leasing contravenes the declared purposes of the Green Acres Land Acquisition Act. We find that the development of a marina is one of the several contemplated recreational purposes embraced by N.J.S.A. 13:8A-48. Since there has not been a diversion from the contemplated recreational purposes, the lease violated neither the spirit nor the letter of the Green Acres Land Acquisition Act. There is no necessity for approval by the State House Commission, nor is there any other statutory impediment.
N.J.S.A. 13:1L-6 grants DEP the authority to enter into contracts with corporations
for the construction, operation and maintenance for private profit of any facility, utility or device upon the State parks and forest, lands and waters, as the department shall find necessary and proper for the use and enjoyment of the lands by the public. Such rights and privileges shall include, but not be limited to, concessions, franchises, licenses, permits and other rights and privileges deemed by the department to be appropriate in the utilization of the lands for the public benefit. [N.J.S.A. 13:1L-6; emphasis supplied].
*17 This section is adequate statutory authority for the DEP to enter into the contract with the Development Corporation for the development of the marina. We agree with the plaintiffs that the statutory wording is general. But in the definitional section of the Green Acres Land Acquisition Act "boating" is an approved "recreational and conservational purpose." N.J.S.A. 13:8A-3(c).[2]
We conclude that creation of a marina is an acceptable implementation of the expressed recreational pursuit of "boating". Under the existing Green Acres regulations, acquisition of marinas and waterfront property with Green Acres funds is a contemplated purpose. N.J.A.C. 7:36-6.10(a) and 6.12. There is sufficient statutory authority in the State Park Forestry and Resources Act and in the Green Acres Land Acquisition Act to convince us that the DEP was not acting in an arbitrary and capricious manner when it leased Green Acres land in Liberty State Park for the development of a public marina.
Our judicial function is to determine whether the agency authorized a reasonable and legally acceptable recreational or *18 conservational development of the land. We do not decide which of many possible uses may be best. That decision is for the Executive Branch, not for the courts. Under the statutes we conclude only that a marina is an acceptable recreational purpose.

IV
We find that the contract and marina lease between DEP and the Development Corporation and the sublease between the Corporation and Developers were not an unlawful delegation of power by DEP to private corporations. These contracts for services and leases of land do not constitute an abrogation of public authority. The contractual agreements may be terminated by the State without cause on 30 days notice. Under the contract "the Development Corporation shall, at all times, act as an independent principal and not as an agent or employee of the Department. The Development Corporation agrees not to enter into any agreement or commitment on the Department's behalf."
In the marina leases, the DEP has not delegated any public authority to the Development Corporation or Waterfront Developers but has retained all necessary residual authority to guarantee that the development proceeds in the public interest. These controls include the DEP's final authority over (a) the Marina Design Plan, (b) the Marina's Management Plan, including berthing policies and fees, (c) all uses of the Marina's land and water areas, (d) Marina Insurance, (e) assignment of rights, (f) inspection of work, (g) termination of the lease and subleases, (h) regulation of public access, and (i) restriction of private development of the Great Lawns. Sufficient control has been maintained by the DEP to defeat the claim of unlawful delegation of governmental power. The Executive Branch is not hamstrung from pursuing its duty to govern effectively in this circumstance where sufficient control accompanies delegation.

*19 V
Appellants contend that the contract and marina lease between DEP and Development Corporation and the marina sublease between the Development Corporation and Waterfront Developers should have been subject to the State's public bidding laws, N.J.S.A. 52:34-6 to -20. We conclude that the public bidding laws are not applicable to these transactions. There is no specific provision in the statutes requiring adherence to the public bidding procedures where State land is leased for recreational development purposes. N.J.S.A. 13:1L-8 specifically provides that DEP "shall have the authority to sell, lease or exchange any lands or any interest therein" without making any reference to the public bidding statutes. N.J.S.A. 52:31-1.1 requires State agencies which are not otherwise authorized to convey land to submit any proposed conveyance to the State House Commission for "public auction to the highest bidder unless the Commission shall otherwise direct," but this provision does not apply to the DEP which is independently authorized to convey park lands. N.J.S.A. 52:31-1.3(b) states that the provisions of the conveyancing statute, L. 1962, c. 220, are "supplemental to any existing authority to sell property of the State and shall not be deemed to be in derogation of such existing authority."
Most important is N.J.S.A. 13:1L-6(a), a broad grant of power to the DEP with respect to the development of State parks. This section states in full.
13:1L-6 Grant of authority to operate facilities for private profit; acquisition of interest in lands
a. Notwithstanding any other law, rule or regulation to the contrary, the department shall have the authority to grant such rights or privileges to individuals or corporations for the construction, operation and maintenance for private profit of any facility, utility or device upon the State parks and forests, lands and waters as the department shall find necessary and proper for the use and enjoyment of the lands by the public. Such rights and privileges shall include, but not be limited to, concessions, franchises, licenses, permits and other rights and privileges deemed by the department to be appropriate in the utilization of the lands for the public benefit. The grant or award of such rights or privileges shall be made in the name of the State of New Jersey and *20 executed by the department, at such price and upon such terms and conditions as shall be fixed by the department. [Emphasis supplied].
Again, no reference is made to the public bidding statutes. Plaintiff's contentions are further undermined by the fact that before enactment of N.J.S.A. 13:1L-6(a), the letting of franchises and facility development in State parks was controlled by N.J.S.A. 13:5-10. That statute, repealed upon the enactment of N.J.S.A. 13:1L-6(a), specifically required public bidding of commercial developments in State parks. See L. 1983, c. 324, § 6, e.d. September 1, 1983. This is clear evidence of legislative intent to give DEP discretion to negotiate this kind of lease for public recreational purposes.
Moreover, as the State appropriately points out, the procedure used by the Development Corporation fulfilled the spirit of the State's bidding laws. The procedure says DEP, referred to as "competitive negotiations," is "designed to solicit creative proposals for innovative projects." The procedure is a recognized method of public procurement, authorized by the federal government. See 40 C.F.R. § 33.505 to .515. The procedure includes a request for proposals, public advertising, and sealed bids, all important aspects of the State's procurement laws. See N.J.S.A. 52:34-12. The procedures do depart from our usual State bidding practice by permitting negotiation with bidders after receipt of bids. But this is a technique particularly suitable for complex real estate development. These procedures were followed in this case in producing the lease and sublease. The process was realistically analogous to the State public bidding procedure and was fair and reasonable.

VI
We find no violation of the "public trust" doctrine or the Donation Clause of the State Constitution, N.J. Const. (1947), Art. VIII, § 111, par. 3. So far as this contention relies on the claim that an unlawful delegation over Liberty State *21 Park to the Development Corporation or Waterfront Developers has occurred, we have rejected this argument in III.
The marina will be open to the general public on a non-discriminatory, first-come-first-serve basis. See N.J.A.C. 7:2-13.2(a). Unsubsidized market-mechanism price determination for berthing services does not alone imply invidious discrimination. N.J.S.A. 13:1L-5(b) (duty of DEP to provide recreational opportunities to all segments of the population). The marina will "be open to the public at large." Matthews v. Bay Head Imp. Ass'n., 95 N.J. 306, 332 (1984). Fees will be subject to DEP approval. The marina area and some parking will be open to the nonboating public. We find the requisite "substantial satisfaction of the public trust doctrine." Id.
Nor is there a violation of the donation or gift clause which prohibits giving public land or funds to private persons. Roe v. Kervick, 42 N.J. 191, 207 (1964). There is both a public purpose served here and legal consideration between the parties. See Wilentz v. Hendrickson, 133 N.J. Eq. 447, 480-481 (Ch.Div. 1943), aff'd 135 N.J. Eq. 244 (E. & A. 1944). The State retains very substantial and close control over the development and operation of the marina. Waterfront Developers must pay a fixed annual base rent of $50,000 for year one, $75,000 for year two and $150,000 for year three plus a fixed percentage of marina receipts (9% or 12% depending upon the level of gross receipts) which will be determined by berthing rates, subject to State approval. These revenues will be used either for the Park or turned over to DEP. The Development Corporation and the private operator, Waterfront Developers, are "so closely identified with accomplishment of the public purpose" by virtue of the contract and the "business activity so closely identified with accomplishment of the public purpose" that the development operation for Liberty State Park is for "practical purposes ... the controlled means by which the government accomplishes a proper objective." Roe v. Kervick, 42 N.J. at 219-220.

*22 VII
We reject the plaintiffs contention that violations of the Open Public Meetings Act, N.J.S.A. 10:4-6 to -21, require judicial intervention. Plaintiffs' allegations of violations of the Act are untimely. The Act specifically requires that any complaint must be brought within 45 days "after the action sought to be voided has been made public." N.J.S.A. 10:4-15(a). Constructive notice is the standard. See Edgewater Park v. Edgewater Park Housing Auth., 187 N.J. Super. 588, 603 (Law Div. 1982). Plaintiffs complain about the Advisory Commission's approval of the Marina project on May 8, 1987. This action was made public at the May 8 meeting. The approval was discussed in at least three newspaper articles on May 9 and May 10. The complaint was not filed until July 8  beyond the 45-day limit. With respect to the Development Corporation, even assuming the Act applies to it, the choice of Waterfront Developers for site development was publicly known in the Fall of 1986, well before the filing of the complaint on July 8, 1987. Acts taken without adequate public notice are voidable, not void. Plaintiffs' Open Public Meetings Law assertions, valid or not, are tardy and not cognizable.

VIII
Although Liberty State Park has been dedicated to public recreation since 1977, much of the parkland has remained unimproved. Some areas are still littered with debris, unusable for any recreational purpose. The Executive Branch has decided that cooperative public-private development is the best way, probably the only way, to develop this unique recreational area in the absence of substantial public funds. We are sympathetic to the plaintiffs' claim that the marina development plans may be targeted for the more affluent segment of our society's recreational users. But we are confident that the overall development of the balance of the Park by the Executive Branch will provide in the end for the use and enjoyment of all economic classes. N.J.S.A. 13:1L-5(b): "The [DEP] shall: ... *23 strive to provide recreational opportunities to all segments of the State's population...."
The final decision of the DEP is affirmed; the appeal of the Jersey City Planning Board is dismissed.
NOTES
[1] The State House Commission consists of the Governor, the State Treasurer, the Comptroller of the Treasurer, two members of the Senate and two members of the Assembly. N.J.S.A. 52:20-1.
[2] The Legislature has given broad authority to DEP to accomplish its environmental and conservation mission: the DEP is authorized to "contract with any other public agency or corporation incorporated under the laws of this or any other State for the performance of any function under this act," N.J.S.A. 13:1D-9(q); pursuant to the enabling statute for the Division of Parks and Forestry, DEP is authorized to "[d]evelop, improve, protect, manage and administer all State forests, State Parks, State recreation areas, State historic sites, and State natural areas, excepting those regulated by interstate compact", N.J.S.A. 13:1B-15.101(a); Green Acres funds are to purchase and develop lands "for recreation and conservation purposes", N.J.S.A. 13:8A-36(d); "recreation and conservation purposes means use of lands for ..., boating ..."; "development" under the Green Acres Act means "any improvement to land or water areas designed to expand or enhance their utilization for outdoor recreation and conservation purposes, including ... site preparation, construction of recreation facilities, ..." N.J.S.A. 13:8A-37(c); under the State Park Forestry and Resources Act, N.J.S.A. 13:1L-6, the DEP grant or award of the right to operate facilities for private profit "shall be made in the name of the State of New Jersey and executed by the Department, at such price and upon such terms and conditions as shall be fixed by the Department."