**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-4585-15T3
                A-5372-15T3
                A-0557-16T4

IN THE MATTER OF SEASIDE
HEIGHTS BOROUGH PUBLIC BEACH

_____

IN THE MATTER OF APPLICATION OF
THE NEW JERSEY DEPARTMENT OF
ENVIRONMENTAL PROTECTION, ON
BEHALF OF THE BOROUGH OF SEASIDE
HEIGHTS, FOR STATE HOUSE
COMMISSION APPROVAL OF PROPOSED
DISPOSAL OF 1.37 ACRES OF
PUBLIC BEACH

_____

STEVEN MELVIN and BOB MOSS,[1]

    Plaintiffs-Appellants,

v.

SEASIDE HEIGHTS BOROUGH and
AFMV, INC.,

    Defendants-Respondents.

_____

Argued telephonically March 14, 2018 —
Decided July 30, 2018

---

[1]  The notice of appeal lists this party as "Bob Moss."  The second amended complaint and the pertinent trial court order identify him as "Robert Moss."

Before Judges Reisner, Hoffman, and Gilson.

On appeal from the New Jersey Department of Environmental Protection (A-4585-15), the State House Commission (A-5372-15), and Superior Court of New Jersey, Law Division, Ocean County, Docket No. L-1752-16 (A-0557-16).

Gordon N. Litwin argued the cause for appellants American Littoral Society, Inc. and New Jersey Conservation Foundation (Litwin & Provence, LLC, and Eastern Environmental Law Center, attorneys; Andrew J. Provence and Aaron Kleinbaum, of counsel and on the briefs; Gordon N. Litwin and Raghu Murthy, on the briefs).

James J. Curry, Jr., argued the cause for appellants Steven Melvin and Bob Moss (The Law Offices of James J. Curry, Jr., attorneys; James J. Curry, Jr., and Timothy J. Petrin, on the briefs).

Jill Denyes, Deputy Attorney General, argued the cause for respondents New Jersey Department of Environmental Protection and State House Commission (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Joan M. Scatton, Deputy Attorney General, on the brief).

Jean L. Cipriani argued the cause for respondent Borough of Seaside Heights (Gilmore & Monahan, PC, and Stone Mandia, attorneys; Jean L. Cipriani and Robin La Bue, on the brief).

R.S. Gasiorowski argued the cause for respondent AFMV, LLC (Gasiorowski and Holobinko, attorneys; R.S. Gasiorowski, on the brief).

PER CURIAM

We have consolidated these three appeals because they all relate to the same underlying subject, the transfer of approximately 1.37 acres of municipally-owned beach property (the beach parcel) in the Borough of Seaside Heights (Borough). The transaction enabled a local entrepreneur (AFMV or pier owner) to rebuild the iconic Casino Pier, which was heavily damaged by Superstorm Sandy, while allowing the Borough to obtain and preserve a historically significant wooden carousel worth millions of dollars. In addition to the carousel, the pier owner gave the Borough a vacant parcel of land along the boardwalk (the boardwalk-fronting parcel) on which to build a museum to house the carousel. To satisfy the Borough's obligation to the Green Acres program, Ocean County also agreed to dedicate, as replacement parkland, 67.17 acres adjacent to a park in Toms River.

Because no stay was issued, the pier has already been built on the beach parcel, its amusement rides are in operation, and the Borough is planning to build the carousel museum on the boardwalk-fronting parcel.[2] Nonetheless, appellants have pursued these

---

[2] At oral argument, the Borough's counsel represented that the Borough will build the museum on the boardwalk-fronting parcel, as opposed to elsewhere, and advised that the Borough was in the process of issuing requests for proposals for the construction of the museum on that parcel. In the meantime, the property exchange

appeals, and no party has moved to dismiss the appeals as moot. Accordingly, we will decide them.

To summarize, in A-4585-15 and A-5372-15, three parties - the American Littoral Society, Inc. (ALS), the New Jersey Conservation Foundation (NJCF) and Steven Melvin - appeal decisions by the New Jersey Department of Environmental Protection (DEP) and the State House Commission (SHC). Those decisions approved the Borough's plan to convey the beach parcel to the pier owner, in exchange for the historic carousel, the boardwalk-fronting parcel, and the parkland in Toms River. The DEP and SHC decisions make clear that this application has unique features, and their approvals are not precedent for other applications to dispose of Green Acres-protected beach property.

Appellants argue that neither agency had authority to approve the project under the Green Acres statute and regulations; the agencies failed to consider the common law public trust doctrine when issuing the approvals; and the Borough will not receive reasonably equivalent property in exchange for the beach parcel. We find no merit in appellants' legal contentions, and it is not our role to second-guess the agencies' policy decisions. With one

---

agreement between the Borough and the pier owner requires the pier owner to store the carousel "to maintain its structural integrity," until the museum is built. The pier owner is also responsible for moving the carousel into the museum.

minor modification to the SHC decision, discussed later in this opinion, we affirm the decisions of both agencies.

In A-0557-16, plaintiffs Steven Melvin and Robert Moss appeal from a September 29, 2016 Law Division order dismissing their complaint. That complaint, which plaintiffs characterized as seeking a declaratory judgment, challenged the legality of a Borough ordinance authorizing the conveyance of the beach parcel to the pier owner. Plaintiffs contended that, under N.J.S.A. 40A:12-16, the Borough lacked authority to convey the parcel, and that the ordinance violated the public trust doctrine.[3] Because plaintiffs intentionally waited almost a year to file their complaint, when the applicable limitations period was forty-five days, we affirm the dismissal of plaintiffs' complaint as untimely.

I

We begin by addressing the DEP and SHC appeals. To place our decision in context, we set forth the following background. The Seaside Heights Borough Public Beach, located within the Borough, is an approximately thirty-five-acre municipal park. A boardwalk runs along its western edge, and visitors use the beach for recreational activities such as swimming, surfing, kayaking,

_____

[3] The complaint also raised a constitutional equal protection challenge. However, plaintiffs waived the constitutional issue when they failed to brief it on this appeal.

camping, volleyball, fishing, movies, and concerts. The beach was encumbered with Green Acres restrictions when the Borough listed it on its Recreation and Open Space Inventory (ROSI)[4] in 1997, in connection with its application for Green Acres funding for the acquisition of another unrelated parcel of land.

The Casino Pier is a privately owned amusement pier extending off the boardwalk in the Borough. The pier, owned by AFMV, a private company, offers rides, games, and concession stands, and is a huge tourist attraction, important to the Borough's economy. The pier is located at the southern end of the Borough's public beach, which runs north to south.

In addition to the pier itself, AFMV also owned the Dr. Floyd L. Moreland, Dentzel/Loof Carousel (hereinafter, the Carousel), housed in a pavilion on the pier. On August 25, 2014, the State Historic Preservation Office (SHPO) issued a Certification of Eligibility for the Carousel, finding it eligible for listing on the New Jersey and National Registers of Historic Places. In making that finding, the SHPO noted that the Carousel, which moved to its present location in the Borough in 1932, features wooden animals carved between the 1890s and 1910s — during the "golden

---

[4] The ROSI is part of a municipality's application for Green Acres funding, and lists "each parcel of land held by the local government unit for recreation and conservation purposes as of the date of the application." N.J.A.C. 7:36-12.5.

age of carousels and the heyday of amusement parks." According to the SHPO, the Carousel's hand-carved and hand-painted animals "embody the distinctive features of a type, period, and method of construction; reflect the work of master craftsmen; and possess high artistic value." Between 1910 and 1920, thirty traditional wooden carousels were present in New Jersey. Today, the Carousel is one of four remaining wooden carousels in the State.

In July 2014, the pier owner listed the Carousel for private sale at an auction house. The auction house, which had experience selling another historic wooden carousel, appraised it at between $2.3 million and $2.5 million. After the listing generated public concern, Borough officials began negotiating with the owner to explore purchasing the Carousel in exchange for assistance in rebuilding Casino Pier, which had been partially destroyed during Superstorm Sandy.

The negotiations led to a proposal for the Borough to receive the Carousel in return for the 1.37-acre beach parcel, located next to the pier. The pier owner proposed to use the beach parcel to replace the destroyed portions of the pier. The beach parcel was classified as unfunded parkland subject to Green Acres restrictions, and was valued at approximately $4.2 million.

On May 6, 2015, the Borough held a scoping hearing to obtain public comments on a proposal to dispose of the beach parcel by

conveying it to the pier owner in exchange for the Carousel and other parcels of land located within the Borough. On June 17, 2015, the Borough Council passed a resolution finding that the transaction would, in part, "[p]reserv[e] the historic [Carousel]." On or about July 1, 2015, the Borough enacted an ordinance authorizing the transaction and the submission of an application to DEP for approval.

On or about July 9, 2015, the Borough filed an application with DEP seeking approval for its proposed exchange with the pier owner. The Borough proposed that, in exchange for the beach parcel, it would receive title to the Carousel, valued between $2.3 million and $2.5 million, as well as title to the boardwalk-fronting parcel, a 0.75-acre lot along the boardwalk's inland side, valued at $2.13 million. The Borough proposed to construct a museum and community facility building to house the Carousel on the boardwalk-fronting parcel. Additionally, the Borough proposed listing various small parcels of Borough-owned properties on the ROSI as additional compensation for the loss of the beach parcel.

On October 30, 2015, the Borough submitted an amended project description. The amended description focused on the Carousel and its historical and cultural importance to the Borough, in contrast to the previous project description, which had emphasized the importance of the project's anticipated effect on the area's

economy, which had been devastated by Superstorm Sandy.

In February 2016, the Borough revised the proposed compensation package. The revised proposal retained the Carousel and the boardwalk-fronting parcel, but removed the small parcels of Borough-owned land after consultation with DEP and members of the public. In place of those small parcels, the Borough offered, in cooperation with Ocean County, to place 67.17 acres of open space located adjacent to Winding River Park in Toms River (the Toms River tract) on the ROSI. According to the Borough, encumbering the Toms River tract "through the Green Acres program for recreational and open space conservational purposes will help to protect the ecologically sensitive environment of the Toms River Subwatershed and the Barnegat Bay Watershed." The appraised value of the Toms River tract was approximately $275,000.

On or about April 5, 2016, Melvin submitted written comments to DEP regarding the disposal application. On or about April 6, 2016, several environmental groups, including ALS and NJCF, submitted written comments via email.

On April 20, 2016, the Borough's governing body passed a resolution endorsing the filing of a final application for the disposal, finding that, after reviewing the oral and written public comments, the project was in the public's best interest. On or about April 22, 2016, the Borough submitted the final part of its

application, which contained, among other documents, proof that the Borough notified the public regarding the final hearing, the transcript from the hearing, and a summary of written comments received from the public.

DEP approved the application on May 18, 2016. In doing so, it acknowledged the possible economic benefits of the Casino Pier redevelopment project, but explained that economic benefits are an insufficient basis for approval under the governing regulations, which require the project to provide a "public benefit" or "exceptional recreation and/or conservation benefit." DEP premised its approval upon "the acquisition of an (arguably) irreplaceable historic property, along with a nearby vacant parcel of land that can, in the future, house the Carousel," finding that they provided an exceptional recreation benefit sufficient to support the application. DEP approved the proposal with the following conditions:

> [1]] Within two years of this approval, the Borough shall prepare and submit the National Register Nomination Form for the listing of the Carousel on the New Jersey and National Registers of Historic Places.
>
> [2]] While the construction of a building to house the Carousel is not part of the compensation for the proposed disposal, the Borough will make its best efforts to make the Carousel available, as a public recreational amenity, within two years of this approval (with up to two six month extensions for good

cause shown[)].

[3)] The Borough shall not convey any property interest to the Casino Pier owners until it has resolved any outstanding issues with the preliminary assessment reports for the proposed replacement land(s) to the Department's satisfaction.

On June 30, 2016, the SHC conducted a hearing on the application. A witness from DEP testified that, although the disposal of public beach property is rare, the "determining factor" supporting DEP's approval "was the aspect involving the historical carousel." Saving the "irreplaceable historic asset," preserving the boardwalk-fronting parcel to house it in the future, and the additional replacement land in the Toms River tract "was sufficient to satisfy [DEP's] requirements." Counsel for the Borough also testified in favor of the application, explaining that, "the whole genesis of this proposal was the historic carousel" and advising that, "it is every intention of the town to house this carousel and make it available for view and operation for the benefit of the public."

Representatives from ALS and NJCF testified before the SHC, in opposition to the proposal. They argued that the proposed compensation package was not a reasonably equivalent replacement because "beachfront property is fundamentally irreplaceable," and contended that the project was intended to "serve private interests

11

and not the public interest."

At the conclusion of the hearing, the SHC voted to approve the application. The SHC imposed the following two conditions: 1) there must be a "facility housing the [C]arousel within three years on the Boardwalk someplace in Seaside Heights" and 2) the Borough must "complete the [federal] historic designation" process with respect to the Carousel.

## II

Our review of the DEP and SHC decisions is limited. Pub. Serv. Elec. & Gas Co. v. N.J. Dep't of Envtl. Prot., 101 N.J. 95, 103 (1985). An agency's decision will only be reversed if: 1) it is arbitrary, capricious, or unreasonable; 2) it violates express or implied legislative policies; 3) it offends the State or Federal Constitution; or 4) if the findings upon which it is based were not supported by substantial, credible evidence in the record. Univ. Cottage Club of Princeton N.J. Corp. v. N.J. Dep't of Envtl. Prot., 191 N.J. 38, 48-49 (2007).

In reviewing administrative decisions, we grant "considerable deference to the agency's expertise, where such expertise is a relevant factor." In re Petition of S. Jersey Gas Co., 447 N.J. Super. 459, 480 (App. Div. 2016). "Ordinarily, DEP is given great deference when it applies its considerable expertise and experience to the difficult balance between development and

12

conservation." In re Stream Encroachment Permit No. 0200-04-0002.1 FHA, 402 N.J. Super. 587, 597 (App. Div. 2008). We also owe deference to DEP's interpretation of the statutes it is charged with enforcing and to the agency's construction of its own regulations. SCJ Builders, LLC v. N.J. Dep't of Envtl. Prot., 378 N.J. Super. 50, 54 (App. Div. 2005). We are limited to deciding whether the agency's decisions are lawful; it is not our role to second-guess the wisdom of its policy choices. In re Adoption of Amendments to Ne., Upper Rariten, Sussex Cty., 435 N.J. Super. 571, 538-84 (App. Div. 2014).

Appellants' arguments revolve around the Green Acres statutes and regulations, and it is therefore helpful to review those enactments. In the 1960s and 1970s, the State enacted several "Green Acres" laws. See L. 1961, c. 45, codified at N.J.S.A. 13:8A-1 to -18 (the New Jersey Green Acres Land Acquisition Act of 1961); L. 1971, c. 419, codified at N.J.S.A. 13:8A-19 to -34 (the New Jersey Green Acres Land Acquisition Act of 1971); L. 1975, c. 155, codified at N.J.S.A. 13:8A-35 to -55 (the New Jersey Green Acres Land Acquisition and Recreation Opportunities Act (hereinafter, the 1975 Green Acres Act, or 1975 Act)). The laws promote public ownership and preservation of lands for recreation and conservation purposes, by providing funding for the State and municipalities to acquire such lands, restricting the transfer of

such lands, and restricting the ability of municipalities to divert the use of such lands to non-recreation or non-conservation purposes.  See N.J.S.A. 13:8A-2; N.J.S.A. 13:8A-20; N.J.S.A. 13:8A-36; N.J.S.A. 13:8A-47.

Pursuant to the 1975 Green Acres Act, municipalities cannot dispose or divert from "recreation and conservation" uses any lands acquired with Green Acres funds, unless they obtain approvals from both DEP and the SHC.[5]  N.J.S.A. 13:8A-47(a).  The 1975 Act defines "recreation and conservation purposes" as "use of lands for parks, natural areas, historic areas, forests, camping, fishing, water reserves, wildlife, reservoirs, hunting, boating, winter sports and similar uses for either public outdoor recreation or conservation of natural resources, or both."  N.J.S.A. 13:8A-37(f).  It also requires DEP and the SHC to approve a municipality's conveyance of any "conservation or recreational properties that were owned by the municipality at the time it received any Green Acres grant, even if such properties had not been acquired or developed with Green Acres funds."  Cedar Cove,

---

[5] Created in 1953, the SHC consists of the Governor, the State Treasurer, and the Director of the Division of Budget and Accounting in the Department of the Treasury, or their designees, two members of the Senate appointed by the Senate President, and two members of the General Assembly appointed by the Speaker. N.J.S.A. 52:20-1.  In addition to its role in the Green Acres program, it controls the sale and leasing of state-owned properties in general. See N.J.S.A. 52:20-7.

<u>Inc. v. Stanzione</u>, 122 N.J. 202, 205 (1991); N.J.S.A. 13:8A-47(b). The municipality must also conduct a public hearing at least one month prior to approval of any proposed sale of Green Acres-encumbered land. N.J.S.A. 13:8A-47(a), (b)(1).

In 1998, a constitutional amendment created a dedicated funding source for the "acquisition and development of lands for recreation and conservation purposes, for the preservation of farmland for agricultural or horticultural use and production, and for historic preservation[.]" <u>N.J. Const.</u> art. VIII, § 2, ¶ 7; N.J.S.A. 13:8C-2. To implement that amendment, in 1999 the Legislature passed the Garden State Preservation Trust Act (GSPTA), N.J.S.A. 13:8C-1 to -42. The GSPTA establishes the Garden State Preservation Trust within the Department of the Treasury, as well as several other funds, including the Garden State Green Acres Preservation Trust Fund and the Garden State Historic Preservation Trust Fund. N.J.S.A. 13:8C-4, -19, -21. The GSPTA also established the Office of Green Acres within DEP to administer both the GSPTA and all other preexisting Green Acres laws. N.J.S.A. 13:8C-24(a) to (b).

Similar to the preexisting Green Acres legislation, the GSPTA requires municipalities to obtain DEP and SHC approval before disposing of any lands identified for recreation or conservation use at the time the municipality received a grant under the GSPTA.

N.J.S.A. 13:8C-32(b). However, unlike its predecessors, the GSPTA requires applicants to provide replacement lands to offset the diversion or disposal of such land. N.J.S.A. 13:8C-32(b)(1). Under the GSPTA, DEP and the SHC shall only approve a diversion or disposal if the municipality agrees to either "replace the lands with lands of equal or greater fair market value and of reasonably equivalent size, quality, location, and usefulness for recreation and conservation purposes, as approved by the commissioner," or "pay an amount equal to or greater than the fair market value of the lands, as determined by the commission, into the Garden State Green Acres Preservation Trust Fund." N.J.S.A. 13:8C-32(b)(1).

Significant to this case, the GSPTA also expansively redefined "recreation and conservation purposes" to include the protection of historic buildings and objects. N.J.S.A. 13:8C-3. Under GSPTA, the definition of "recreation and conservation purposes" includes "the use of lands for . . . protecting historic properties." N.J.S.A. 13:8C-3. Moreover, "historic preservation" includes "any work relating to the conservation, . . . preservation, [or] protection . . . of any historic property . . . ." N.J.S.A. 13:8C-3. In turn, the definition of "historic property" includes an "object" with historical significance:

A-4585-15T3

"Historic property" means any area, building, facility, <u>object</u>, property, site, or structure approved for inclusion, or which meets the criteria for inclusion, in the New Jersey Register of Historic Places . . . .

[N.J.S.A. 13:8C-3 (emphasis added).]

The inclusion of "historic properties" within the definition of "recreation and conservation purposes" is consistent with the GSPTA's express aim to address the "urgent need" to "enable present and future generations to experience, understand, and enjoy the landmarks of New Jersey's role in the birth and development of this nation[.]"  N.J.S.A. 13:8C-2.[6]

DEP's regulations provide additional details regarding the process for approving an application to dispose protected parklands.  N.J.A.C. 7:36-25.2 to -26.11.  The regulations define "funded parkland" as land acquired or developed by a municipality with Green Acres funding, and "unfunded parkland" as parkland, other than funded parkland, that is held by a local government unit for recreation and conservation purposes at the time of receipt of Green Acres funding.  N.J.A.C. 7:36-2.1.  Consistent

---

[6] The most recent legislation governing Green Acres issues is the Preserve New Jersey Act (PNJA), N.J.S.A. 13:8C-43 to -57, passed in 2016 following another constitutional amendment.  The PNJA incorporates by reference the definition of recreation and conservation purposes set forth in the GSPTA, as well as the GSPTA's restrictions on the use of land encumbered by Green Acres restrictions.  N.J.S.A. 13:8C-45; N.J.S.A. 13:8C-53.  It took effect following the DEP and SHC approvals appealed here.

with the GSPTA, a municipality that wishes to dispose of either funded or unfunded parkland must file an application for approval with DEP and the SHC. N.J.A.C. 7:36-26.1(b). Any proposal to dispose of more than 0.5 acres of funded or unfunded parkland qualifies as a "major disposal" for the purposes of the regulations. N.J.A.C. 7:36-26.2(c).

Here, the beach parcel constitutes unfunded parkland subject to the alienation restrictions contained in the Green Acres statutes, the GSPTA, and the implementing regulations. As the beach parcel exceeds 0.5 acres in size, it qualifies as a "major disposal" under the applicable regulations. N.J.A.C. 7:36-26.2(c).

A. Whether the Agency Decisions were Ultra Vires

Against that statutory and regulatory backdrop, we first consider appellants' three arguments, supporting their contention that the agency approvals were ultra vires. Appellants contend that the decisions were impermissibly "motivated" by economic considerations; the Green Acres program does not authorize acquisition of historic objects such as the Carousel; and the agencies failed to make required factual findings.

1. **Economic Considerations**

Appellants first argue that the agencies improperly approved the application in order to provide an economic benefit to the

Borough and the pier owner. They argue that preserving the Carousel was "an afterthought."

Under the regulations, DEP and the SHC may only approve an application for a major disposal if it meets the "minimum substantive criteria." N.J.A.C. 7:36-26.1(d). Appellants rely upon the provision requiring projects to either "satisfy a compelling public need" or provide one of the following "public benefits": 1) mitigating a hazard to the public health, safety, or welfare; 2) improving the delivery of essential public services or providing affordable housing; or 3) providing an "exceptional recreation and/or conservation benefit" by "substantially improving the quantity and quality of parkland" within either the municipality or the watershed in which the parkland proposed for disposal is located, "without resulting substantially in any of the adverse consequences listed at N.J.A.C. 7:36-26.1(e)[.]" N.J.A.C. 7:36-26.1(a), (d)(1).

Appellants contend that, because the regulations do not enumerate "economic development" as one of the required "public benefits," N.J.A.C. 7:36-26.1(d), DEP and the SHC should have denied the application. We cannot agree with appellants that it is "beyond the authority" of DEP and the SHC to consider the economic impact of a disposal application.

The regulations set forth the minimum criteria that any

A-4585-15T3

disposal application must satisfy. N.J.A.C. 7:36-26.1. The regulations do not forbid DEP and the SHC from approving an application that may result in economic benefits, nor do they require the agencies to ignore the possible economic impacts of their decisions. Indeed, the same regulation appellants cite also requires DEP to "carefully weigh the competing public interests presented by the project," which may reasonably include economic interests. See N.J.A.C. 7:36-26.1(c). So long as the application satisfies the minimum criteria set forth in the statutes and regulations, the agencies' acknowledgement of a project's economic impact does not undermine the legality of their decisions.

To the extent appellants claim that the agencies made their decisions solely for economic reasons, the record demonstrates otherwise. DEP addressed this very issue in its decision. In approving the Borough's application, DEP acknowledged "the Borough's economic concerns," but did not "endorse them as being the primary justification for approval of this application." DEP explained that, under its regulations, "[e]conomic development, in and of itself (without other unique contributing factors) is not sufficient justification for the exchange of beachfront property for non-beachfront property."

The agency considered the acquisition of an "irreplaceable historic property, along with a nearby vacant parcel of land that

can, in the future, house the Carousel, to be the public benefit and/or the 'exceptional recreation and/or conservation benefit' supporting approval of this application." It also recognized that "it is the Borough's long-term intention to build a pavilion on the [boardwalk-fronting parcel] to house the Carousel (as a functioning recreational amenity for the public) and to showcase the history of the Borough." DEP also required the Borough to make "its best efforts to make the Carousel available, as a public recreational amenity, within two years of this approval (with up to two six month extensions for good cause shown[.)]"

At the SHC hearing, the DEP representative reiterated that the "determining factor" behind DEP's approval "was the aspect involving the historical carousel." The SHC relied upon DEP's report when voting to approve the project. The SHC also went farther than DEP, in requiring the Borough to place the Carousel in a facility on the boardwalk in the Borough within three years. Both agencies recognized the importance of the Carousel and the boardwalk-fronting parcel as an integral aspect of the exchange and as the basis for their approvals. That the agencies also recognized the economic impact of their decisions is not a ground to reverse those determinations.

Although the Borough's subjective motivations are not relevant, we note that the Borough's resolution endorsing the

initial application, passed before the Borough filed it with DEP, expressly identified preserving the Carousel as one of the primary benefits to be gained from conveying the beach parcel to the pier owner. In its initial application, the Borough also included a letter from the National Carousel Association, addressing the value of the Carousel.

2. **Agency Authority to Approve a Transaction Involving the Carousel**

Appellants next argue that DEP and the SHC acted beyond their authority because "the acquisition of personal property to be housed indoors as a museum piece is beyond the mandate of the Commission and DEP's Green Acres program." We disagree with that analysis, because the GSPTA authorizes the use of land to preserve historic properties, which in turn includes historic "objects." See N.J.S.A. 13:8C-3.

Appellants next contend that the statute's use of the term "land" appears to exclude a historic object as an authorized acquisition, "independent from the acquisition of real property." Pursuant to the GSPTA, DEP and the SHC may approve a municipality's application to dispose parkland if the municipality "agrees to . . . replace the lands with lands of equal or greater fair market value and of reasonably equivalent size, quality, location, and usefulness for recreation and conservation purposes, as approved

by the commissioner . . . ." N.J.S.A. 13:8C-32(b)(1) (emphasis added). As previously noted, the GSPTA's definition of "recreation and conservation purposes" includes "the use of lands for . . . protecting history properties." N.J.S.A. 13:8C-3 (emphasis added); N.J.A.C. 7:36-2.1. Read together, these statutory provisions appear to require the exchange of lands together with historic properties, not the exchange of land for historic properties independent of any replacement land.

Similarly, for major disposals, the regulations require applicants to "compensate for the disposal" with "eligible replacement land, parkland improvements, dedicated funds for the acquisition of land for recreation and conservation purposes or other monetary compensation," in accordance with N.J.A.C. 7:36-26.10. N.J.A.C. 7:36-26.1(d)(3). Pursuant to N.J.A.C. 7:36-26.10(c)(1) and (e), compensation may include either replacement land or monetary compensation payable to the Garden State Preservation Trust or a dedicated account for parkland purposes, or both. The regulations contemplate that any major disposal must involve replacement land, not solely personal property, and in this case there is no proposal to pay monetary compensation to the Trust or to a dedicated account.

In this case, DEP found that the Borough intended to use the boardwalk-fronting parcel to house and showcase the Carousel in

23

the future. During the SHC hearing, DEP's representative stated that "it is every intention of the town to house this carousel and make it available for view and operation for the benefit of the public." Therefore, the Borough's proposal involved replacement "land" (the boardwalk-fronting parcel) that will be used for "protecting historic properties" (the Carousel), which satisfies the statutory definition of lands used for recreation and conservation purposes. N.J.S.A. 13:8C-3; N.J.S.A. 13:8C-32(b)(1).

The SHC did not include that requirement in its decision, instead requiring the Borough to build the carousel museum somewhere on the boardwalk. However, it appears clear that the Borough is planning to build the museum on the boardwalk-fronting parcel, as its counsel represented to us at oral argument. To ensure that the agency decisions are consistent with the GSPTA, we hereby modify the SHC decision to require that the Borough use the boardwalk-fronting parcel as the site of the museum.

### 3. Agency Fact Finding

Pursuant to N.J.A.C. 7:36-26.1(d)(1)(iii), DEP and the SHC may approve a major disposal application that provides a "public benefit" in the form of an "exceptional recreation and/or conservation benefit" by: 1) "substantially improving the quantity and quality of parkland" within the municipality or the parkland's watershed; 2) "without resulting substantially in any of the

adverse consequences listed at N.J.A.C. 7:36-26.1(e)."  According to appellants, DEP and the SHC failed to find that the proposed disposal would "substantially improve the quality" of parkland, and failed to find that none of the enumerated adverse consequences apply.

With respect to the "substantially improve the quality" requirement, DEP's decision includes factual findings relating to the value of the compensation package proposed by the Borough. The decision discussed the history of the Carousel, which traces back to the 1890s, the Carousel's rarity as one of only four remaining wooden carousels in New Jersey, its "high artistic value," and described the Carousel as "one of the largest and finest carousels ever made."  DEP also discussed the Borough's continued efforts to address "a lot of public concern" caused by the Carousel's possible destruction and its strong interest in obtaining and preserving the Carousel.  The decision also relied upon the more recent history of the Carousel, which underwent extensive restorations spearheaded by a local resident, Dr. Floyd L. Moreland — after whom the Carousel is now named — in the 1980s when the Carousel was under a similar threat to be dismantled and sold.  DEP explained that the boardwalk-fronting parcel would house the Carousel in the future in a showcase of the Borough's history.

The above facts clearly relate to the "quality" of the replacement land and Carousel. In comparison, the Seaside Heights Borough Public Beach is approximately thirty-five acres in size, and the Borough proposes to dispose of just 1.37 acres by selling it to a private company that will continue to use the parcel for recreational purposes available to the public.

The record thus contains sufficient factual support for the agencies' conclusions that the replacement land and Carousel will substantially improve the quality of parkland in the Borough. See Aqua Beach Condo. Ass'n v. Dep't of Cmty. Affairs, 186 N.J. 5, 16 (2006) (stating that a court may not substitute its judgment for the agency's so long as substantial credible evidence supports the agency's conclusion) (citing Greenwood v. State Police Training Ctr., 127 N.J. 500, 513 (1992)).

Next, appellants argue that DEP and the SHC erred by failing to find that the project will not substantially result in any adverse consequences, as set forth in N.J.A.C. 7:36-26.1(e). As previously noted, DEP approved the Borough's project pursuant to N.J.A.C. 7:36-26.1(d)(1)(iii). Under that regulation, a project which disposes of parkland will be approved if it provides an "exceptional recreation and/or conservation benefit" that will "substantially improv[e] the quantity and quality of parkland . . . without resulting substantially in any of the adverse

consequences listed at N.J.A.C. 7:36-26.1(e)." N.J.A.C. 7:36-26.1(d)(1)(iii) (emphasis added). This language is not discretionary. It appears as part of a list that subsection (d) defines as "minimum substantive criteria" to justify the disposal of funded or unfunded parkland. N.J.A.C. 7:36-26.1(d). Therefore, under the plain language of the regulation, DEP and the SHC must consider whether a proposed disposal will "substantially" result in any of the adverse consequences listed at subsection (e). Those adverse consequences include a "significant" adverse impact on the public's use and enjoyment of "the remainder of the parkland," loss of "a central, unique or significant parkland site or feature[,]" substantial interference with water quality protection efforts or shoreline protection, or a significant adverse effect on an endangered species or the habitat of an endangered species. N.J.A.C. 7:36-26.1(e).

Under other circumstances, we might remand this matter to DEP for further consideration and findings as to subsection (e). However, the current record persuades us otherwise. DEP previously issued a CAFRA permit for the construction, a decision no party has appealed. Further, on this appeal as before DEP, appellants have not cited to evidence of any possible adverse consequences of the type listed in subsection (e). Because the project has already been built, and there is no evidence in the record that

any of the adverse consequences listed in (e) may result, we conclude that a remand is not warranted.

B. <u>The Public Trust Doctrine</u>

Appellants next contend that DEP and the SHC "had a duty to review the proposal" under the public trust doctrine. They argue that the agencies "were required to ascertain whether the public had the right" under the doctrine to "continue to access and recreate" on the beach parcel. We conclude that the argument is without sufficient merit to warrant more than brief discussion. <u>R.</u> 2:11-3(e)(1)(E).

None of the cases appellants cite are on point here. The public trust doctrine protects the public's right of access to the beach for traditional water-related purposes including "bathing, swimming and other shore activities." See <u>Matthews v. Bay Head Improvement Ass'n</u>, 95 N.J. 306, 321 (1984). The doctrine therefore precludes a municipality from discriminating against non-residents by charging them higher fees to use its beaches. See <u>Borough of Neptune City v. Borough of Avon-by-the-Sea</u>, 61 N.J. 296, 308-09 (1972). Likewise, the doctrine precludes a municipality from transforming its beachfront into a private club for a similar exclusionary purpose, or allowing a private owner to exclude beach-goers from the dry upland portion of the beach. See <u>Matthews</u>, 95

N.J. at 331-32; <u>Raleigh Ave. Beach Ass'n v. Atlantis Beach Club, Inc.</u>, 185 N.J. 40, 59-60 (2005). None of that is occurring here.

Unlike the private beach clubs found to violate the public trust doctrine, the newly-built amusement pier is open to the public. In fact, the CAFRA permit that allowed construction of the pier requires that it be open to the public. Further, it is clear from the record that the public will have access to the strip of dry-sand beach between the pier and the ocean. That satisfies the requirement that beaches and other land affected with the public trust be "open to the public at large." <u>See</u> <u>Matthews</u>, 95 N.J. at 332 (1984); <u>see also</u> <u>Jersey City v. State Dep't of Envtl. Prot.</u>, 227 N.J. Super. 5, 21 (App. Div. 1988).

Unlike <u>Raleigh Avenue Beach</u>, where the town had no publicly-owned beaches, here the public will continue to have ample beach access on the Borough's approximately thirty-three remaining acres of publicly-owned beach. <u>See</u> 185 N.J. at 56. In fact, both the Borough's DEP application and the testimony at the SHC hearing indicate that, as a result of a beach replenishment project conducted by the Army Corp of Engineers, the Borough will have considerably more than thirty-three acres of public beach.

C. <u>Adequacy of Compensation</u>

Appellants' final argument is that the compensation proposed by the Borough — the Carousel, the boardwalk-fronting parcel, and

the Toms River tract — is inadequate under the applicable statutes and regulations.

Pursuant to the GSPTA, any disposal of covered parkland must involve an agreement by the disposing municipality to either pay a sum to the Garden State Preservation Trust or replace the disposed lands with "lands of equal or greater fair market value and of reasonably equivalent size, quality, location, and usefulness for recreation and conservation purpose[s]." N.J.S.A. 13:8C-32(b)(1).

The DEP regulations set forth several additional requirements that, according to appellants, the Borough's proposal did not satisfy. See N.J.A.C. 7:36-26.10(d). First, the replacement land must satisfy N.J.A.C. 7:36-26.10(d)(7) and Table 1 to N.J.A.C. 7:36-26.10(g), which the parties agree requires a 1:4 ratio of disposed land to replacement land. It is clear that the compensation proposed by the Borough satisfies this requirement. N.J.A.C. 7:36-26.10(d)(7). According to DEP's findings, the disposal property constitutes 1.37 acres, whereas the total replacement land constitutes 67.921 acres. That far exceeds the requisite 1:4 ratio.

Second, the replacement land must have a market value equal to or greater than the disposed parkland. N.J.A.C. 7:36-26.10(d)(5). On this record, the fair market value of the

replacement lands and Carousel exceeds the fair market value of the beach parcel. DEP found that the appraised value of the beach parcel is $4.2 million, and that the appraised value of the replacement lands and Carousel is between $4.705 million and $4.905 million.

Third, the replacement land must be of "reasonably equivalent or superior quality" to the disposed parkland, with respect to "location, accessibility, usefulness for recreation purposes, and value for ecological, natural resource and conservation purposes." N.J.A.C. 7:36-26.10(d)(6). There is ample support in the record for DEP's conclusion that the replacement lands, taken as a whole, will substantially improve the quality of parkland in the area.[7]

Appellants argue that, since the Toms River tract is only useful for conservation purposes, it is not "reasonably equivalent" to the beach parcel's recreational uses. However, the regulations do not require the agencies to analyze each individual component of the replacement package to determine whether each parcel is independently "reasonably equivalent." Rather, the regulations refer to the "replacement land" as a whole. See N.J.A.C. 7:36-26.1; N.J.A.C. 7:36-26.10.

---

[7] The Borough's brief represents — and appellants do not dispute — that Toms River and the Borough are located in the same watershed. See N.J.A.C. 7:36-26.10(d)(8); N.J.A.C. 7:36-26.1(d)(1)(iii).

The record supports the agencies' finding that all three components of the compensation package — the Carousel, boardwalk-fronting parcel, and the Toms River tract — are reasonably equivalent to the beach parcel, when viewed collectively. DEP set forth sufficient findings that support the recreational and cultural quality of the Carousel and boardwalk-fronting parcel. Those two items exceed the fair market value of the beach parcel, serve the same beach-going population, and provide a recreational use. See N.J.A.C. 7:36-26.10(d)(6) ("In evaluating the usefulness of the proposed replacement land, the Department shall pay particular attention to ensuring that parks that provide services to significant populations are replaced with recreation areas that serve the same, if not broader population[.]"). Preserving the Carousel will provide a valuable recreational and cultural public benefit to the Borough's residents, the expanded amusement pier will be available to the public and provide shore access, and the Borough will lose just 1.37 acres out of a thirty-five acre public beach. Additionally, there is evidence that the Toms River parcel can be used for recreation, such as hiking.

Appellants' policy argument - that the value added by the Carousel pales in comparison to the beach parcel — does not carry the day here. Those policy judgments are properly within DEP's and the SHC's discretionary authority. We will not overturn an

agency determination because of "doubts as to its wisdom or because the record may support more than one result." In re N.J. Pinelands Comm'n Resolution, 356 N.J. Super. 363, 372 (App. Div. 2003). Likewise, appellants' claim, that the Toms River tract is a less valuable recreational resource than the beach parcel, is a policy argument, and we will not second-guess DEP's judgment on that issue.

Accordingly, we affirm the DEP decision, and we affirm the SHC decision as modified in this opinion.

### III

We next turn to the appeal of the Law Division order. In A-0557-16, plaintiffs argue that the trial court incorrectly dismissed their complaint as untimely, by improperly relying on the rules governing actions in lieu of prerogative writs, and that the challenged ordinance is illegal and void. We affirm substantially for the reasons stated by the Law Division judge in his comprehensive opinion. We add only brief comments.

We agree with the Law Division judge that plaintiffs should have filed their challenge as an action in lieu of prerogative writs. See R. 4:69-1. Complaints in lieu of prerogative writs must be filed within forty-five days of the challenged municipal action. See R. 4:69-6(a). The forty-five day time limit serves "the important policy of repose." Reilly v. Brice, 109 N.J. 555,

559 (1988). In this case, plaintiffs tried to circumvent the forty-five day time limit by instead filing a declaratory judgment complaint. The Law Division correctly rejected that effort.

We affirm the dismissal of the complaint as untimely. Plaintiffs were well aware of the proposed ordinance, and submitted public comments opposing it before its adoption. However, they intentionally waited nearly a year before filing their complaint. See Southport Dev. Grp., Inc. v. Twp. of Wall, 310 N.J. Super. 548, 556 (App. Div. 1998) (If a party "sat idly by in the past, its entitlement to enlargement of the time limit is weakened."). We agree with the trial court that the forty-five day time limit, set forth in Rule 4:69-6(a), began to run when the ordinance was published, not when DEP and the SHC issued their decisions. See Adams v. Delmonte, 309 N.J. Super. 572, 578-79 (App. Div. 1998). Plaintiffs' argument to the contrary is without merit. R. 2:11-3(e)(1)(E).

In the circumstances of this case, the public interest does not warrant extending the deadline, where the parties had an opportunity to challenge the underlying transaction before DEP and the SHC. See R. 4:69-6(c) (permitting enlargement of the time in the interest of justice). In fact, as noted earlier in this opinion, Melvin is also a party to the DEP and SHC appeals. Plaintiffs' further arguments concerning the timeliness of their

complaint are without sufficient merit to warrant discussion in a written opinion.    R. 2:11-3(e)(1)(E).

However, we also agree with the trial judge that the statutory issue, which plaintiffs sought to raise in this action, is without merit.   The statute on which plaintiffs rely, N.J.S.A. 40A:12-16, permits a municipality to exchange one parcel of parkland for another.   Both the boardwalk-fronting parcel in the Borough and the sixty-seven acres outside Toms River will be used as "parkland," as defined in DEP's Green Acres regulations, and will remain subject to Green Acres restrictions.   See N.J.A.C. 7:36-2.1; N.J.A.C. 7:36-26.10(m).   Likewise, plaintiffs' arguments premised on the public trust doctrine are without merit, for the reasons stated earlier in this opinion.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4585-15T3