THE CITY OF NEWARK, PLAINTIFF-APPELLANT, v. NEW
JERSEY TURNPIKE AUTHORITY, CONSTRUCTION AG-
GREGATES CORPORATION, AND PETER KIEWIT &
SONS CO., DEFENDANTS-RESPONDENTS.

Argued May 28, 1951—Decided June 18, 1951.

378

*Mr. Charles Handler* argued the cause for the appellant (*Messrs. George B. Astley* and *Algernon T. Sweeney* on the brief).

*Mr. Ward J. Herbert* argued the cause for the respondents.

The opinion of the court was delivered by

VANDERBILT, C. J.    This is an appeal by the City of Newark from a summary judgment of the Chancery Division of the Superior Court granted on the motion of the defendants. The appeal was taken to the Appellate Division of the Superior Court and while there pending was certified here on our own motion.

The New Jersey Turnpike Authority was created by the New Jersey Turnpike Authority Act of 1948 (*L.* 1948,

c. 454, as amended L. 1950, c. 1) for the purpose of financing, constructing and operating a modern express highway traversing the State from the George Washington Bridge in the north to the Delaware Memorial Bridge in the south. The route determined upon by the Authority for the turnpike runs south through the easterly section of the City of Newark from Point No Point on the Passaic River to Bound Creek on the Essex-Union County Line, with interchanges at Raymond Boulevard and Port Street approximately two miles apart. The Authority's plans call for the construction of approximately 7,100 feet of the turnpike in the Newark area from Roanoke Avenue to the Lehigh Valley Railroad on a base of earth varying in height from 5 to 67 feet, with bridges provided across certain streets and railroads. In August, 1950, the contract for the grading of the Newark portion of the turnpike was awarded to Construction Aggregates Corporation and Peter Kiewit & Sons Co.

The city instituted this action to enjoin the performance of the grading contract, to prevent the construction of this portion of the turnpike in the manner contemplated, to have the Turnpike Authority Act declared unconstitutional, and to obtain temporary restraint pending final determination of the action. In support of its contention that the Authority palpably abused its power in settling upon the present mode of construction, the city alleged that the Raymond Boulevard interchange is unnecessary and requires an excessive taking of potentially valuable land and that building upon a base of earth, rather than erecting a steel or reinforced concrete structure with an open base, is wasteful of land and, in addition, is neither practical nor standard construction, and interferes unduly with existing and paper streets and with the city's master plan for future industrial development. The city's attack upon the constitutionality of the Turnpike Authority Act was premised upon the assertion that section 5 (j) of the act vesting powers of eminent domain in the Authority and sections 7 and 8 of the act dealing with the method of issuing bonds by the Authority constitute an

illegal delegation of legislative power for want of appropriate standards. The city also averred in its complaint that the consent of its board of commissioners is mandatory under section 14 of the act before the Authority can take public lands now devoted to the public use, and that the plenary powers of the city under the Home Rule Act (*R. S.* 40:67–1 *et seq.*) to regulate and control its streets have not been extinguished or impaired by the Turnpike Authority Act.

After answering the complaint, the Authority and its co-defendants moved for summary judgment on the pleadings pursuant to *Rule* 3:56 and lengthy affidavits and exhibits were duly submitted by the parties. The trial court granted the defendants' motion, holding that "no genuine factual issue on the subject of palpable abuse of authority" in the determination of the mode of construction was presented, and that there was no merit to the city's contentions that the Turnpike Authority Act was unconstitutional or that the Authority's actions were otherwise invalid. It is from this judgment that the city appealed.

As its principal point the city contends that the pleadings, affidavits and exhibits raised a genuine issue of fact on which trial should have been had and that the court below erred in entering summary judgment on the defendants' motion. With this contention we do not agree. The Turnpike Authority is an independent public corporation especially created by the Legislature to carry out legitimate and important functions of government. It is a body both corporate and politic analogous in many respects to a municipal corporation, *New Jersey Turnpike Authority v. Parsons,* 3 *N. J.* 235 (1949). Like a municipal corporation it is vested with and enjoys a considerable degree of discretion as to the manner in which it carries out its functions. So long as such a corporation operates within the orbit of its statutory authority, it is well established that the courts will not interfere with the manner in which it exercises its power in the absence of bad faith, fraud, cor-

ruption, manifest oppression or palpable abuse of discretion, 2 *McQuillan, Municipal Corporations* (*3rd ed.* 1949) §§ 10.33-10.37 and the numerous cases there cited. Therefore, since in the instant case it is unquestioned and, indeed, unquestionable that the Turnpike Authority was acting within the scope of its statutory powers in determining upon the location and mode of construction of the turnpike, the court below quite properly concluded that the question on the motion for summary judgment was whether the pleadings, affidavits and exhibits created an issue of fact on which a finding might be made that the Authority in adopting its plans was guilty of a palpable abuse of discretion. The city objects to the use of the term "palpable abuse of discretion" and asserts that the true issue is whether the Authority unreasonably or arbitrarily exercised its discretion. This objection is of no significance, however, for the terms are substantially synonymous as is indicated in *Dubin v. Wich,* 120 *N. J. L.* 469, 471 (*Sup. Ct.* 1938). It is there stated that "it is the settled rule that the exercise of a discretionary authority will not be disturbed unless palpably abused, *i. e.,* the action taken is arbitrary or capricious." The test applied by the court below in determining the legality of the action of the Authority was that laid down in *Mayor, etc., Elizabeth v. N. J. Turnpike Authority,* 7 *N. J. Super.* 540, 545-546 (*Ch.* 1950), upon the authority of *Mowry v. Department of Public Works,* 177 *N. E.* 753 (*Ill.* 1931), and *Boyden v. Department of Public Works,* 182 *N. E.* 379 (*Ill.* 1932). In both these cases the Illinois Supreme Court stated:

"To justify a court in holding unjust, unreasonable, or oppressive the act of the Department of Public Works and Buildings in designating the route for the construction of a hard surfaced road under the provisions of the first or second Road Bond Issue Act, it must clearly appear from the evidence that there has been an abuse of discretion and an oppressive exercise of power in the location of the road. It is not enough that there should be a difference of opinion between the court and the officers of the department. The questions of the location of the road and the manner of its construction are committed to the judgment of the department, and that judgment must be conclusive unless the evidence clearly satisfies the court that

the department's action has been oppressive and without reasonable grounds. If there is room for reasonable difference of opinion the department's action is conclusive."

In approving the test applied by the court below, however, we do not go so far as to accept the statements to be found in *State Highway Commission v. Elizabeth,* 102 *N. J. Eq.* 221 (*Ch.* 1928), affirmed 103 *N. J. Eq.* 376 (*E. & A.* 1928), and in *Everett W. Cox Co. v. State Highway Commission,* 4 *N. J. Misc.* 510 (*Sup. Ct.* 1926), to the effect that the discretionary power of a body charged with highway construction is absolute. Such a holding would give to the Authority a freedom even greater than that of its creator, for the Legislature itself in the constitutional exercise of its police powers cannot be arbitrary or capricious, *Reingold v. Harper,* 6 *N. J.* 182 (1951).

Not only are we of the opinion that the court below was correct in holding that the question for determination on the motion for summary judgment was whether or not the pleadings, affidavits and exhibits created an issue of fact on which a finding might be made following trial that the Authority had palpably abused its discretion, but we likewise agree with the conclusion of the court below that no such issue was presented. The papers filed in the cause reveal a decided difference of opinion as to what the best method of construction would be and as to the necessity for the Raymond Boulevard interchange, but they do not indicate either that the Authority's plans were arbitrary and capricious or that they will not carry out the mission committed to the Authority by the Legislature in a reasonably acceptable manner. The city clearly failed to raise any real question as to whether the Authority's plans were so far from right as to be a manifest abuse of discretion, and under *Rule* 3:56-3 it was therefore entirely proper for the court below to have granted the defendants' motion for summary judgment.

The city next contends that section 5 (j) of the act vesting powers of eminent domain in the Authority is void as an un-

constitutional delegation of legislative power. The basis for this contention is that when the Turnpike Authority Act was amended in 1950 (*L.* 1950, *c.* 1) following the decision of this court in *New Jersey Turnpike Authority v. Parsons,* 3 *N. J.* 235 (*Sup. Ct.* 1949), *section* 5 (j) of the act was changed to provide that the Authority could acquire by the exercise of the power of eminent domain any land "which it may determine is reasonably necessary" for its projects. The addition of the quoted words, the city contends, empowers the Authority to condemn not only property which is reasonably necessary for its purposes but also such property which in its opinion is, or which it may determine to be reasonably necessary whether or not it is in fact or in law reasonably necessary, and therefore renders this section of the act unconstitutional under the holding in *Abelson's, Inc., v. New Jersey Board of Optometrists,* 5 *N. J.* 413 (1950). This is not a condemnation case, however, and it does not appear that the Authority is exercising its power to acquire any lands of the city by way of eminent domain. Nevertheless, because the plans of the Authority call for the taking of streets owned by the city, since it appears that the consent of the city to such a taking is not likely to be forthcoming, and the question has been fully briefed and argued, we will pass on it to prevent useless future litigation.

In the *Abelson* case, *supra,* we were dealing with an act which permitted a professional licensing board to revoke licenses for "any conduct which, in the opinion of the board, is of a character likely to deceive or defraud the public," *R. S.* 45:12–11 (*o*). We there held that the standard of conduct imposed was vague and indefinite and not sufficiently explicit to inform those of the profession affected as to the conduct which would render them liable to the penalties that the board was authorized to impose. Such is not the instant case. As pointed out by the court below, the act here in question contains numerous standards as detailed as could reasonably be incorporated therein if the Authority is to function effectively. The words "which it may deter-

mine is reasonably necessary" are not objectionable when used to designate the amount of land which the Authority may acquire for the purpose of carrying out its projects. Such words as this, indicating a delegation of discretionary power, are frequently to be found in statutes where it is impossible or impractical for the Legislature to prescribe in advance, for example, the amount of property, the quantity of materials, or the number of employees which are to be required to carry out the statutory design. It is interesting to note that *R. S.* 40:60–2 granting the power of eminent domain to every municipality provides that each may acquire by condemnation such property as "its governing body shall decide to be necessary or useful for the proper exercise of any power conferred upon the municipality by this or any other law." The words of the Turnpike Authority Act, to which the city here objects, invest the Authority with a power that is primarily administrative and not legislative in nature. The exercise of this power is restrained by the declared policy and spirit of the act and the criteria and standards therein laid down.

█ The cases and the authorities are in agreement that in condemnation proceedings the quantity of land to be taken, its location, and the time of taking are within the discretion of the body endowed by the legislature with the right of eminent domain. The rule is well stated in 1 *Nichols, Eminent Domain* (*3rd ed.* 1950) 383:

"The legislature may, and usually does, delegate the power of selecting the land to be condemned to the public agent that is to do the work; in such case it makes little, if any, difference whether the grant of authority is, in terms, limited to such land as is 'necessary' for the purpose in view, for a general grant of authority carries the same limitation by implication and in either case the necessity is for the condemnor and not for the courts to decide, and the decision of such condemnor is final as long as it acts reasonably and in good faith."

In the case of *City of Philadelphia v. Ward,* 34 *A.* 458, 459 (*Pa.* 1896), the statutory language was quite similar to that objected to in the instant act. The Pennsylvania Supreme Court there stated:

"In the present case it must be borne in mind that the power to determine what land was necessary for the site of the bridge was expressly conferred by the act of 1870 upon the commissioners who were authorized to erect the bridge. They 'may take actual possession of any land or property at or near South Street which they may deem necessary for the site of the bridge.' It follows that they alone were empowered to determine how much land was necessary, and, when their decision was made, it was final as to that subject. Nothing but an abuse of this power could suffice to overthrow their action."

For other cases of similar import see *Ryan v. Housing Authority of Newark*, 125 *N. J. L.* 336, 340-341 (*Sup. Ct.* 1940); *Rindge Co. v. Los Angeles County*, 262 *U. S.* 700 (1923); *United States v. Dugger*, 89 *F. Supp.* 877 (*D. C. E. D. Tenn.*, 1948); *Housing Authority v. Higgenbotham*, 143 *S. W. 2d* 79 (*Tex.* 1940); *Spahn v. Stewart*, 103 *S. W. 2d* 651 (*Ky.* 1937); *Lynch v. Forbes*, 37 *N. E.* 437 (*Mass.* 1894. The validity of the Authority's exercise of its right of eminent domain can obviously only be determined from case to case on the facts presented in an actual condemnation proceeding.

The city further asserts that under section 14 of the act the Authority cannot take public lands now devoted by the city to the public use without the consent of its board of commissioners and that the plenary powers of the city under the Home Rule Act (*R. S.* 40:67–1 *et seq.*) to regulate and control its streets have not been extinguished or impaired by the Turnpike Authority Act. These assertions are so devoid of merit as to approach the specious and may be summarily dealt with. First, these assertions are utterly incompatible with the right of eminent domain granted the Authority by section 5 (j) of the act, which specifically provides that the Authority may acquire by eminent domain any lands and other property "including public lands, parks, play grounds, reservations, highways or parkways, owned by or in which any county, city, borough, town, township, village, or other political subdivision of the State of New Jersey has any right, title or interest, or parts thereof or rights therein * * *." A clearer specification of the extent of

the Authority's power to condemn the city's property would be difficult to draft. Second, the idea that any and every municipality along the route of the proposed turnpike could effectively veto either its location or the manner of its construction by a withholding of consent is in direct conflict with the very concept of a turnpike designed to serve the best interests of the entire State and not merely those of particular localities. Third, section 14 of the act is obviously not intended to be a limitation upon the Authority's power of eminent domain, but rather to make clear that the Authority and municipalities have the power to arrange privately for the transfer of municipal lands to the Authority "without the necessity for any advertisement, order of court or other action or formality, other than the regular and formal action of the authorities concerned." Fourth, section 21 of the act expressly provides that "All other general or special laws, or parts thereof, inconsistent herewith are hereby declared to be inapplicable to the provisions of this Act." The Legislature has broad and well established powers over municipalities, *Stothers v. Martini,* 6 *N. J.* 560 (1951), and its ability to provide for the superiority of the Authority over the city in the respects here involved is therefore beyond question.

Finally, the constitutional question raised by the city as to the validity of the method provided in sections 7 and 8 of the act for the issuance of bonds by the Authority is patently beyond the scope of this proceeding and we therefore express no opinion thereon. The parties necessary for a determination of this question are not before the court and it does not appear that the city has any interest therein or is injured thereby.

The judgment appealed from is affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices CASE, HEHER, OLIPHANT, BURLING and ACKERSON—6.

*For reversal*—None.