NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-3318-15T3

MONTCLAIR STATE
UNIVERSITY,

    Plaintiff-Appellant,

v.

COUNTY OF PASSAIC and
CITY OF CLIFTON,

    Defendants-Respondents.

_____

> **APPROVED FOR PUBLICATION**
>
> **August 23, 2017**
>
> **APPELLATE DIVISION**

Argued May 31, 2017 — Decided August 23, 2017

Before Judges Koblitz, Rothstadt and Sumners.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Docket No. L-2866-14.

Antonio J. Casas argued the cause for appellant (Windels Marx Lane & Mittendorf, LLP, attorneys; Samuel G. Destito, of counsel and on the briefs; Mr. Casas and Sandy L. Galacio, Jr., on the briefs).

Michael H. Glovin argued the cause for respondent County of Passaic (William J. Pascrell, III, Passaic County Counsel, attorney; Mr. Glovin, of counsel and on the brief).

Marvin J. Brauth argued the cause for respondent City of Clifton (Wilentz, Goldman & Spitzer, PA, attorneys; Mr. Brauth, of counsel and on the brief).

The opinion of the court was delivered by

ROTHSTADT, J.A.D.

In Rutgers v. Piluso, 60 N.J. 142 (1972), the Supreme Court addressed the limits of a local government's authority to regulate development of a state university's property that was confined to its campus. In this dispute, we are asked to determine whether those limits apply to a state university's construction of a roadway that intersects with a county road. For the reason expressed herein, we hold that the limits imposed by Rutgers apply equally to the development proposal in this case, reverse the trial judge's dismissal of plaintiff's complaint and remand the matter for a trial.

Plaintiff Montclair State University (MSU) appeals from the Law Division's March 7, 2016 order dismissing its complaint for declaratory and injunctive relief that sought an order permitting it to proceed with the development of a roadway from its campus to Valley Road in Clifton. Prior to filing the complaint, MSU spent approximately six years consulting with defendants County of Passaic and City of Clifton, both of which interposed various objections and concerns about the project. Through various meetings between construction professionals, MSU was able to satisfy most of defendants' concerns about the roadway.

In 2014, MSU submitted an application to the county for a permit to install traffic controls at the proposed intersection of the roadway and Valley Road. In its cover letter, MSU stated that it was exempt under Rutgers from seeking any approvals from Clifton's land use boards. When the county failed to respond, MSU filed a complaint for declaratory judgment and injunctive relief, seeking a determination that the county's refusal to issue the permit was contrary to law and directing that it be issued so MSU could construct the proposed roadway.

At a hearing held on the return date of an order to show cause, the trial judge addressed the limits of the county's authority to withhold approval. He stated that the county did not have jurisdiction over the speed limit on the roadway as it is on state land. He also noted that while defendants could be legitimately concerned with a "palpably unsafe" intersection, they could not block the proposal simply because it would generate more traffic. Despite those observations, the judge denied the relief plaintiff sought, reasoning MSU had not complied with its obligations under Rutgers only because it needed an updated traffic study. The judge, however, specifically contemplated that he would be "review[ing the] up-to-date expert reports" and making the ultimate determination whether the project should proceed. On November 6, 2014, he

entered an order requiring the parties to submit updated traffic studies and requiring "the parties [to] consult, which shall include, without limitation, appearances before the Planning Boards of the City of Clifton and the County of Passaic." The court retained jurisdiction in the event the parties could not reach a resolution.

In accordance with the judge's order, the parties obtained updated traffic studies that concluded traffic conditions had not changed from the last completed traffic study in 2004. MSU's expert concluded that its proposed "design does not create [a] safety risk." Defendants' expert concluded that the roadway did not meet certain American Association of State Highway and Transportation (AASHTO) and New Jersey Department of Transportation (NJDOT) criteria. On April 1, 2015, the parties and their respective experts met again to resolve the matter. Defendants made numerous recommendations to the proposed design, which MSU reviewed with its experts. Following the meeting, MSU proposed additional revisions to its plans, which the county found "acceptable." The county also asked MSU's engineers to consider redesigning the road for higher speeds, but MSU rejected this recommendation explaining that it "would have the unintended consequence of encouraging higher operating speeds and could result in an unsafe condition." In response, the

county disagreed, its counsel stating that a thirty-five mile-per-hour design would support anticipated traffic volume and explaining that "it is totally unreasonable to expect drivers to adhere to a 15 or 20 mph speed limit along a newly constructed roadway." MSU submitted a revised plan that reflected changes that satisfied some of the county's concerns. The county, however, refused to issue a permit because it believed the roadway design continued to fail to meet applicable AASHTO/NJDOT standards and because Clifton's approval was required for a proposed traffic signal as it would impact municipal roadways.

Believing it had reached an impasse with defendants, MSU wrote to the court and requested the matter be relisted for a decision. Clifton objected, arguing that MSU had not returned to its planning board. While awaiting a response from the judge, MSU's and the county's engineers corresponded about the roadway's design, the proposed traffic signal and speed limits. Clifton did not participate in the exchanges between MSU and the county.

The trial judge heard the matter again on February 25, 2016. MSU argued that it had revised its plans to resolve the county's and Clifton's concerns regarding safety, that the only area on which they could not agree was the design of the roadway that was located entirely on MSU's property, and MSU had sole

jurisdiction over the roadway. It also argued there was expert testimony that confirmed the roadway design was safe, and had met all of the requirements under Rutgers. The county acknowledged that MSU had accommodated nearly all of the county planning board's comments, but it still took issue with the stopping distance from the bottom of the hill leading into the intersection.

After considering the parties' arguments and without taking any testimony, the judge dismissed MSU's complaint, finding that he had an insufficient record to rely upon because MSU had not appeared before the county's or Clifton's planning boards as he previously ordered. The judge instructed MSU that its choices were to appeal his determination or "set something up so there can be a record [which could] be basically an encapsulation of the old prior . . . hearings and the plans and how much of an accommodation has already been made by the university."

On appeal, MSU relies on the holding in Rutgers and argues that the trial judge abused his discretion by dismissing its complaint without determining whether MSU met its obligation under Rutgers "to act reasonably and consult with the county and city" and by adding a requirement that MSU return to Clifton's planning board for approval for any reason, including, for the development of a record. Defendants respond by arguing Rutgers

is "distinguishable" from this case because its exemption from the authority of local zoning boards does not apply to "legitimate safety concern[s]" about MSU's proposal.

We conclude from our review of the record and the applicable legal principles that the trial judge correctly recognized that Rutgers controlled MSU's application, but he mistakenly exercised his discretion by dismissing MSU's complaint and requiring the matter be heard by the municipal and county planning boards for development of a record.

Like Rutgers University, MSU is a state university,[1] N.J.S.A. 18A:64-45, and is therefore permitted to exercise certain "governmentally autonomous powers." Rutgers, supra, 60 N.J. at 158; see also N.J.S.A. 18A:64-7 (granting state colleges broad control over their property). In Rutgers, the Supreme Court upheld the exclusion of Rutgers University's proposed land development from local regulation. Rutgers, supra, 60 N.J. at 144, 159. According to the Court, "the Legislature did not intend the growth and development of Rutgers University to be subject to restriction or control by local land use

---

[1] MSU was originally a state college and later transitioned into a state university. Most recently, the Legislature enacted the Montclair State University Act, which placed it on par with Rutgers University as a research university. Montclair State University Act, L. 2017, c. 178 (supplementing and amending Title 18A of the New Jersey Statutes).

regulations." Twp. of Franklin v. Den Hollander, 172 N.J. 147, 150 (2002).

A state university's "immunity [from regulation] is not completely unbridled" and must not "be exercised in an unreasonable fashion so as to arbitrarily override all important legitimate local interests." Rutgers, supra, 60 N.J. at 153 (citing Washington Twp. v. Village of Ridgewood, 26 N.J. 578, 584-86 (1958)). Like other state agencies immune from local regulation under similar circumstances, a state university must "weigh conscientiously local interests, to examine carefully whether the proposed . . . facility is compatible with the surrounding land uses and to consult the local ordinances and authorities in making its . . . decision." Twp. of Franklin, supra, 172 N.J. at 150 (quoting Garden State Farms, Inc. v. Bay, 77 N.J. 439, 455-56 (1978) (addressing "Commissioner of Transportation['s] authority concerning the placement of aeronautical facilities" within a community)). The university has an "implied duty" to consider local interests that obviously include legitimate "safety concerns." Id. at 151 (quoting Holgate Prop. Assocs. v. Twp. of Howell, 145 N.J. 590, 601, 603 (1996)).

To satisfy its obligation, a state university "ought to consult with the local authorities and sympathetically listen

and give every consideration to local objections, problems and suggestions in order to minimize the conflict as much as possible." Twp. of Fairfield v. State, Dep't of Transp., 440 N.J. Super. 310, 319 (App. Div.) (quoting Garden State Farms, Inc., supra, 77 N.J. at 455), certif. denied, 222 N.J. 310 (2015). It must act reasonably in its consideration of local concerns. See Kearny v. Clark, 213 N.J. Super. 152, 160-61 (App. Div. 1986). A difference of opinion as to the best method to address a local traffic safety concern alone, however, does not support a finding that the state university acted unreasonably. See Cedar Grove v. Sheridan, 209 N.J. Super. 267, 280 (App. Div.) (addressing Department of Transportation's placement of a traffic signal at a location opposed by local residents through petitions and letters), certif. denied, 104 N.J. 464 (1986); see also City of Newark v. N.J. Turnpike Auth., 7 N.J. 377, 381-82, appeal dismissed, 342 U.S. 874, 72 S. Ct. 168, 96 L. Ed. 657 (1951).

In order to satisfy its obligation to reasonably consider local safety concerns, a state university is not obligated to appear before local land use boards. "The fact that [its] officials did not appear before the Local Planning Board does not establish that [it] acted unreasonably [as long as there is

evidence that the university] listened to local objections and considered them." Kearny, supra, 213 N.J. Super. at 160.

Because of the limits imposed on a state university's decision making process, the immunity from regulation, which Rutgers applied to dormitories and other on-site campus construction, applies as well to a state university's proposed construction of an on-site road that will intersect a local or county road. In either case, it is clear that the state university must reasonably take local safety concerns into consideration when formulating and executing its plans.

The determination of whether a state university has complied with its obligation to consult and consider local concerns is a judicial function not conditioned upon consideration by a local zoning board. A municipal planning board "lacks standing and jurisdiction over the development project [because g]enerally, local zoning and planning regulations cannot affect the State's authority to carry out public functions for the benefit of all the people of the State, especially on the State's own land." Jersey City v. State Dep't of Envtl. Prot., 227 N.J. Super. 5, 14 (App. Div.) (citing Rutgers, supra, 60 N.J. at 152-53) (finding appellate review appropriate where issue was whether agency met its obligation when appeal arose from final agency decision), certif. denied,

111 N.J. 640 (1988). Unlike judicial review of a land use board's final decision that requires a trial on the record developed before a local board, see R. 4:69; see also Willoughby v. Planning Bd. of Twp. of Deptford, 306 N.J. Super. 266, 273-74 (App. Div. 1997), disputes as to whether a state university satisfied its obligation to consider local concerns is a matter to be determined based upon a record developed at a trial, see N.J.S.A. 2A:16-58, to the extent any facts are in dispute or are not clear. Cf. Jersey City, supra, 227 N.J. Super. at 14 (finding "[t]he facts surrounding the controversy [were] clear").

Applying these guiding principles here, we are constrained to remand this matter to the trial judge for reinstatement of plaintiff's complaint and a trial, if necessary, for the judge to determine whether MSU satisfied its obligation under Rutgers. We observe that the record contains substantial evidence of the parties' efforts to identify and address local concerns over many years, which the trial judge may solely rely upon in his discretion in determining whether MSU satisfied its duty to consider those concerns. If an evidentiary hearing is required, it is to be held before the judge.

Reversed and remanded for further proceedings consistent with our opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3318-15T3