JUSTICE LaVECCHIA delivered the opinion of the Court.
**437 This appeal raises substantive and procedural issues about the immunity from local zoning laws and regulation that Rutgers v. Piluso, 60 N.J. 142, 286 A.2d 697 (1972), recognized for a state university with respect to improvements on state-owned land.
**438 Case law recognizes that a state higher educational institution like Montclair State University (MSU), statutorily vested with control over its property, see N.J.S.A. 18A:64-7, has a form of immunity, or exemption, from local land use controls when it comes to the use and development of its own property. However, that discretionary authority is not absolute: the freedom to act independent of local land use control may not be exercised in unreasonable ways.
In this matter, MSU commenced an action in the Law Division of the Superior Court, invoking *617 judicial authority over an impasse that had developed between MSU and local governmental authorities concerning improvements to the intersection of a campus road with a Passaic County (County) road in the City of Clifton (City). MSU sought an order either (1) directing the County to issue three permits related to the intersection and affiliated roadway improvements; or, in the alternative, (2) declaring that state law exempts MSU from local permitting requirements or approval for its desired road improvements, regardless of whether a traffic signal is installed at the intersection.
The trial court declined the requested relief and dismissed the action; the court told MSU either to appear before the local planning board to establish a record on the public safety concerns expressed by the local governmental authorities or to appeal. MSU appealed and the Appellate Division reversed the dismissal of the action and remanded for further proceedings before the trial court.
We granted the City's petition for certification, seeking correction of the Appellate Division's interpretive guidance on Rutgers and clarification of that decision's application in circumstances, as here, where local authorities have raised public safety concerns. For the reasons that follow, we affirm with modification the judgment of the Appellate Division.
We now reaffirm principles expressed in the Rutgers decision. Further, we address the application of those principles when the **439 planned state agency activity is asserted to have a direct public safety impact affecting off-site land for which local governmental authorities have a responsibility to act in the public interest and could be potentially liable should a tort claim arise.
First, we clarify and hold that under the qualified immunity addressed in Rutgers a state agency must be able to demonstrate both that the planned action is reasonable and that the agency reasonably consulted with local authorities and took into consideration legitimate local concerns. Meaningful consultation with appropriate local public authority is a necessary part, but consultation alone does not suffice to conclusively address the essential question about the reasonableness of the planned action.
Second, we hold that when the otherwise immune state agency's improvement directly affects off-site property and implicates a safety concern raised by a local governmental entity responsible to protect public safety with respect to that off-site property, special judicial review and action is required. We continue to recognize that the state entity may not be compelled to submit to review before a planning board. However, in circumstances such as are presented here, a judicial finding that the cited public safety concern has been reasonably addressed through the planning for the state agency's improvement shall be a necessary additional requirement before a court may either compel local regulatory action or grant declaratory relief that the planned action is exempt from land use regulation.
We do not intend to specify what record warrants such a finding in every case. Rather, the trial court should determine, on a case-by-case basis, whether it could make such a finding via a summary proceeding or whether a more fulsome proceeding is necessary.
I.
A.
Since 2004, MSU has attempted to create a third egress from its Passaic County campus onto Valley Road, also known as Passaic **440 County Road 621. MSU wants *618 to relieve traffic congestion on its campus roads and provide easier access onto and off of the campus and its roadways. Specifically at issue here, MSU wants to convert Yogi Berra Drive -- a campus road on state property that intersects with Valley Road -- from an ingress-only road to an ingress/egress road.
MSU consulted with both the County and the City about the project for almost six years. During that extended process, MSU submitted construction plans for review, retained experts to study traffic and safety concerns, and, ultimately, agreed to change portions of its plan to address concerns raised by both the County and the City. After conferring with both entities over several years, MSU was able to satisfy most concerns about the project.
On April 7, 2014, MSU submitted permit applications to the County Engineer for the new egress. The first permit application was for a "right-of-way access permit/curb cut permit," that would allow MSU to relocate the access driveway to a new location, and to install 320 feet of "full height (raised) curbing." The permit application indicates that the purpose of the work was to construct a new driveway and add a traffic signal, and that the work would be located on Valley Road. A second permit application, asking for a storm drain connection, requested that the County allow MSU to connect a storm drain into the County's existing system at Valley Road. Finally, consistent with an alternative plan for the access driveway, MSU submitted another application also for a "right-of-way access permit/curb cut permit," allowing the University to relocate the access driveway to a new location and to install 130 feet of "full height (raised) curbing" alongside the county road.
With respect to all of the permits, MSU asked for issuance of approval either with or without the installation of a traffic light to control the traffic on Valley Road as well as the entry and exit of traffic flowing between Valley Road and Yogi Berra Drive. The MSU Board of Trustees also adopted a resolution committing to assume the cost and maintenance of a traffic signal, if one were permitted.
**441 In its cover letter to the County Engineer that accompanied the permit applications, MSU recounted the extended history of discussion, public comment, and negotiation with local officials about the project, as well as the changes that had been made to its plans as a result of those consultations. MSU sought a statement that its application was now complete, asserting that the University was exempt, under Rutgers, from seeking approval for the project from the City's land use boards.
When the County failed to respond to MSU's permit applications, MSU filed this action against the County on July 29, 2014, seeking a judgment declaring that no permit or other local approval was required, or alternatively, an order compelling the County to issue all necessary permits. The court permitted the City to intervene.
On the return date of an order to show cause, the trial court denied MSU the relief sought. The court addressed the scope of the County's authority over the proposed construction on state land. Relying on Rutgers, the court reasoned that the parties must exchange updated traffic studies, consult further, and appear before the local planning boards. The court retained jurisdiction in the event the parties could not reach a resolution.
The parties met and conferred. Although MSU agreed to make more changes to its plans, the impasse over issuance of the permits remained.
The principal point of contention was the design speed of the campus roadway, which the County and City claimed was *619 unsafe. Yogi Berra Drive is built on an incline. The County and the City posited that the road curve should be altered and that the road should have a thirty-five mile-per-hour design speed with up to a twenty-five mile-per-hour posted speed. MSU declined to make that change, relying on its experts' conclusion that the road's planned twenty mile-per-hour design speed and fifteen mile-per-hour posted speed would be safe, and that the alternative design was unsafe because it would encourage higher operating speeds. Ultimately, the County refused to issue the permits, despite **442 MSU's issuance of a revised plan that addressed most of the County's concerns, because it believed the roadway design failed to meet applicable safety standards and because the City's approval was necessary to locate a proposed traffic signal on the roadway of Valley Road.
MSU asked the trial court to relist the matter for issuance of a decision. Over the City's objection based on MSU's failure to appear before City planning boards, the court heard the matter again on February 25, 2016. MSU argued that (1) it had met all requirements under Rutgers; (2) its revised plans resolved the County's and City's safety concerns; and (3) the only area on which the parties could not agree -- the design of the roadway -- concerned a project located entirely on MSU's property and over which MSU had sole jurisdiction. The County and City argued that there were still safety issues due to the roadway design and the ability of cars descending Yogi Berra Drive at the intersection with the county road to maintain control; that said, the County acknowledged that MSU had made the project "safer" and had "accommodated" most of the County Planning Board's comments.
The trial court dismissed MSU's complaint for declaratory and injunctive relief because MSU had not returned to the local planning boards, as had previously been ordered, to develop the record further. The trial court advised MSU that its options were either to appeal or "set something up so there can be a record" concerning the roadway plans and MSU's accommodations of the recommendations made by the County and the City.
B.
MSU appealed and argued that it was an abuse of discretion by the trial court to dismiss the complaint "without determining whether MSU met its obligation under Rutgers to act reasonably and consult with the county and city," and by mandating "that MSU return to Clifton's planning board for approval for any reason, including, for the development of a record." Montclair State Univ. v. County of Passaic, 451 N.J. Super. 523, 530, 169 A.3d 508 (App. Div. 2017) (internal quotation marks omitted). The **443 Appellate Division framed the question as whether known "limits [to] a local government's authority to regulate development of a state university's property that was confined to its campus ... apply to a state university's construction of a roadway that intersects with a county road." Id. at 527, 169 A.3d 508.
The panel reversed and remanded "for reinstatement of plaintiff's complaint and a trial, if necessary, for the judge to determine whether MSU satisfied its obligation under Rutgers." Id. at 533, 169 A.3d 508. The panel concluded that the court "mistakenly exercised [its] discretion by ... requiring the matter be heard by the municipal and county planning boards for development of a record." Id. at 530, 169 A.3d 508. Rather, the panel held that MSU enjoys a limited immunity but that Rutgers controls here and prohibits MSU from exercising its power in an "unreasonable fashion." Id. at 530-31, 169 A.3d 508 *620 (quoting Rutgers, 60 N.J. at 153, 286 A.2d 697 ).
The panel explained, first, that a "difference of opinion as to the best method to address a local traffic safety concern alone ... does not support a finding that the state university acted unreasonably." Id. at 532, 169 A.3d 508. Turning then to the consultation that occurred, the panel emphasized that MSU "must reasonably take local safety concerns into consideration when formulating and executing its plans." Ibid. However, the panel clarified that "[t]he determination of whether a state university has complied with its obligation to consult and consider local concerns is a judicial function not conditioned upon consideration by a local zoning board." Ibid. Accordingly, the panel remanded the matter to the trial court with the instruction that the court determine whether MSU had adequately and reasonably consulted with the County and City. Id. at 533, 169 A.3d 508.
We granted the City's petition for certification. 231 N.J. 330, 175 A.3d 174 (2017).[1] We also granted the motions of the Attorney **444 General of New Jersey and of Rutgers, the State University of New Jersey (Rutgers), to appear as amici curiae in this matter.
II.
A.
The City argues that, as a general matter, state agencies enjoy an immunity from local control but not an absolute immunity. It asserts that Rutgers set forth a multi-part test for a trial court's use in disputes involving a state entity's assertion of immunity from local land use and regulatory controls. According to the City, that test is as follows: when a local governmental entity (1) raises an important local interest, a court is required to assess (2) whether the state agency invoking immunity is acting in an "unreasonable fashion so as to arbitrarily override all important legitimate local interests," (quoting Rutgers, 60 N.J. at 153, 286 A.2d 697 ), and (3) whether the state entity has consulted with, listened to, and considered "local objections," (quoting Rutgers, 60 N.J. at 154, 286 A.2d 697 ).
The City argues that the Appellate Division ignored the prong that addresses the reasonableness of the action by focusing solely on the act of consultation with local agencies and not considering reasonableness as a distinct query related to the proposed project and its effect. According to the City, the Appellate Division decision allows a state agency to move ahead with a project so long as the agency is satisfied with the reasonableness of its own proposal, without regard to a dispute between state and local entities as to the project's safety. The decision thereby grants the agency unfettered ability to implement an unreasonable project, according to the City. Moreover, the City maintains that the panel's approach forecloses judicial review of the state agency's reasonableness decision.
B.
The County generally supports the City's position. It distinguishes Rutgers from this case on the basis of the County's **445 governmental powers. It also asserts that the safety concerns raised here are "different than the zoning regulations raised" in Rutgers, limiting its applicability. The County posits that the design speed for the downhill travel on the roadway at issue, coupled with the "somewhat sharp turn at the bottom of the roadway at *621 its connection with the Valley Road," is a legitimate safety concern. The County expressed concern about "how many vehicles could be stacking up at the new proposed ... [i]ntersection at any particular time and how dangerous that stacking might be in relation to the vertical and horizontal curvature of the roadway." Finally, the County notes that if MSU's design moves forward as planned, and the County's safety concerns materialize, then the County could be exposed to tort liability it "might be powerless to deny."
C.
MSU argues that the Appellate Division correctly applied Rutgers when the panel remanded the case to the trial court. MSU suggests that the City misreads the Appellate Division's decision, which "expressly reject[ed] the notion that a state university can comply with the law without giving real consideration to local concerns."
MSU asserts that in this matter there is substantial evidence that it listened to the City and the County and substantively addressed each issue, making significant changes to its plans to accommodate most local concerns. It only declined to redesign Yogi Berra Drive after its experts concluded that the original design was safe and that the proposed alternative could create an unsafe situation. Thus, MSU says it fully complied with Rutgers, as evidenced by its meaningful consultations with the City and County and its willingness to make reasonable adjustments for safety concerns, despite a difference of opinion between the parties.
**446 D.
Two amici support MSU in this matter.
1.
The Attorney General asks this Court to hold, consistent with Rutgers, that the trial court must "balance State sovereignty with important legitimate local interests by employing deferential consideration of whether [MSU] reasonably consulted" with the City and the County. As long as the State "hears local concerns and reasonably exercises its immunity in light of those concerns," the Attorney General asserts that, consistent with Rutgers, state sovereign immunity "permits a State project to go forward, even if local objection persists."
The Attorney General notes that state entities routinely undertake projects that could touch on significant local issues. The Attorney General argues that the State must have immunity from local ordinances because "a shift in this well-established balance" would undermine sovereign immunity and allow local entities to stall State projects with "years of objections," effectively "giv[ing] the local entity an unfettered veto power over the State project."
2.
Rutgers argues that although the Appellate Division correctly understood the Rutgers standard, the panel erred in remanding the case for further proceedings in the trial court. State institutions, according to Rutgers, must retain autonomy to improve facilities consistent with the best interest of their stakeholders, including the public, so long as the institutions provide appropriate attention to communicated local concerns and land use requirements. Rutgers submits that the Rutgers decision struck the appropriate balance. It urges us to reframe the standard as requiring that "a State university's land use determinations w[ill] be upheld so long as the university had an informed, rational basis **447 for such determinations, after taking local objections or concerns into account." *622 In arguing that there is no procedural hearing requirement, Rutgers reasons that an arbitrary and capricious standard should govern in this type of dispute.[2] Consistent with that standard, Rutgers asserts that a court should uphold a university's proposed project if it falls on the spectrum of informed and rational decision-making. Finally, Rutgers acknowledges that a reviewing court should consider the off-site impact on an adjoining municipality that relates to the development of state land, but argues that, without "such an off-site impact, there can be virtually no local objections to the proposed land use."
III.
A.
In the 1972 Rutgers case, relied on by all parties to this action, this Court considered the autonomy that a state university has from local land use regulation. In broaching the immunity question in the setting of the then-only state university, with the added unique status of Rutgers due to its institutional history, this Court noted that determining which governmental entities "are immune from municipal land use regulations, and to what extent, is not ... properly susceptible of [an] absolute or ritualistic answer." 60 N.J. at 150, 286 A.2d 697.
The issue of immunity from municipal land use controls had arisen before for various types of governmental entities including **448 state authorities, a county entity, and in an instance of an inter-municipality conflict. Canvassing its prior case law where immunity from local land use control was at issue, id. at 151-52, 286 A.2d 697, the Court observed that no "absolute criteria" had been adopted "as decisive," id. at 151, 286 A.2d 697.
Prior to Rutgers, this Court considered two cases that involved local assertions of municipal land use control over lands that had become subject to state authorities empowered to construct highway road projects.
In City of Newark v. Turnpike Authority, the City of Newark brought an action seeking "to enjoin [a] ... grading contract, to prevent the construction of [a] portion of the turnpike in the manner contemplated, [and] to have the Turnpike Authority Act declared unconstitutional." 7 N.J. 377, 380, 81 A.2d 705 (1951). This Court rejected the notion that the local governmental authority superseded the power granted to the state agency by the Legislature, noting that the Turnpike Authority's enabling act specifically overrode all other general laws. Id. at 384, 81 A.2d 705. The Court added that
the idea that any and every municipality along the route of the proposed turnpike could effectively veto either its location or the manner of its construction by a withholding of consent is in direct conflict with the very concept of a turnpike designed to serve the best interests of the entire State and not merely those of particular localities.... The Legislature has broad and well established powers over municipalities, and its ability to provide for the superiority of the Authority *623 over the city in the respects here involved is therefore beyond question.
[ Id. at 387, 81 A.2d 705 (citation omitted).]
In Town of Bloomfield v. Highway Authority, 18 N.J. 237, 238, 113 A.2d 658 (1955), this Court more directly addressed a state entity's immunity from local land use controls. There, a municipality sought a declaration that the State Highway Authority "was subject to local zoning and building regulations in the erection of restaurants and gasoline stations at service areas along the Parkway within the territorial limits of the Town." Ibid. This Court began its analysis by identifying the legal principles underlying sovereign immunity in that context. Id. at 241-43, 113 A.2d 658 (citing **449 Port of N.Y. Auth. v. Weehawken Township, 27 N.J. Super. 328, 333, 99 A.2d 377 (Ch. Div. 1953), rev'd 14 N.J. 570, 103 A.2d 603 (1954), for its collection of cases supportive of view that "independent state and bi-state authorities are generally immune from municipal ordinances and other local regulations" (internal quotation marks omitted) ); see also Newark v. Tpk. Auth., 7 N.J. at 387, 81 A.2d 705 ; Interstate Bridge & Tunnel Comm. v. City of Jersey City, 93 N.J. Eq. 550, 553, 118 A. 264 (Ch. 1922) ("Municipalities are the creatures of the state and the powers given to them are always subject to be abridged or repealed by the sovereign who conferred them.... [T]he state, in the act creating the bridge and tunnel commission ... with all the powers appropriate and necessary for the proper performance of [its] duties, without any limitation as to municipal control, overrode [the local code] to the extent of nullifying its provisions so far as they required compliance with them by the state.").
Finding that the Legislature had the clear power to "immunize its public Authorities from the provisions of local zoning and building restrictions," the Court turned its attention to whether the building of service areas was similarly exempt from local zoning and building requirements. Bloomfield v. Highway Auth., 18 N.J. at 244, 113 A.2d 658. Acknowledging the importance of the Parkway as a state project on public land, and the "widespread" "belief" that the "need [for new highway construction] is very urgent," the Court concluded that the legislation authorizing the highway construction "was intended to and does immunize fully the Authority's proper operations from the restrictive provisions of the local zoning ordinances." Id. at 248-49, 113 A.2d 658.
The Court took into account that there were "widespread objections by local communities and residents ... to the encroachments of new highways and their untoward incidents." Id. at 248, 113 A.2d 658. However, the Court perceived that a balancing of interests tipped in favor of the proposed State action:
Such objections ... are, of course, understandable and are to be sympathetically heard and fairly considered by the agency charged with the high responsibility of effectuating the public objective with due regard for individual rights. But these rights, valuable as they are, must, in the public interest, give way to the greater **450 good for the greater number and where the agency has, within its statutory delegation, conscientiously selected the route of the highway and the sites of its incidental facilities, it is highly proper that the courts not intrude.
[ Id. at 248-49, 113 A.2d 658.]
As those two cases reflect, when the issue of land use controls arose in the setting of a state institution of higher education in Rutgers, this Court had highly relevant precedent concerning challenges by local governmental entities to state construction *624 projects on state-owned land on which to rely.
B.
In Rutgers, we were asked to consider the extent to which a municipality's zoning ordinances could place limits on a housing expansion by a state university on its own lands, where the municipality claimed that the project would impact municipal resources and services. 60 N.J. at 144-50, 286 A.2d 697. Rutgers planned to build additional housing for student families on University-owned land. Id. at 145, 286 A.2d 697. The location of the student-family campus housing brought it within an area of Piscataway Township in which the local zoning ordinance, according to the Township, would have limited the married-student housing to 500 units but "allow[ed] unlimited housing facilities for unmarried students." Id. at 146-47, 286 A.2d 697.
Piscataway denied Rutgers building permits to construct units in excess of the capped number. Id. at 147, 286 A.2d 697. Rutgers then sought a variance from the Board of Adjustment, which was denied. Ibid. Accordingly, Rutgers commenced an action in lieu of prerogative writs in the Law Division of the Superior Court, which ultimately resulted in a trial court order granting Rutgers' motion for summary judgment. 113 N.J. Super. 65, 66, 71-73, 272 A.2d 573 (Law Div. 1971). Among its arguments before the trial court, and the only one advanced before this Court, Rutgers contended that, "as an instrumentality of the state, [it was] not subject to a local zoning ordinance." 60 N.J. at 147, 286 A.2d 697.
**451 At the outset of its analysis, our Court acknowledged some general "black letter law" according to which,
[a]bsent a waiver expressed by, or necessarily inferred from, the language of a state statute, a state is not amenable to the zoning regulations of its political subdivisions[,] and [a] public corporation or authority created by the state to carry out a function of the state is not bound by local zoning regulations.
[ Id. at 150, 286 A.2d 697 (third alteration in original) (internal quotation marks omitted).]
However, the Court in Rutgers rejected a "presumption of immunity" based exclusively on the superiority one governmental entity may have over another in hierarchy, see id. at 152 n.4, 286 A.2d 697, and settled on a test that depends on "legislative intent ... with respect to the particular agency or function involved," to be divined from a number of factors, id. at 152, 286 A.2d 697. The factors the Court listed as the "most obvious and common" are
the nature and scope of the instrumentality seeking immunity, the kind of function or land use involved, the extent of the public interest to be served thereby, the effect local land use regulation would have upon the enterprise concerned[,] and the impact upon legitimate local interests.
[ Id. at 153, 286 A.2d 697.]
The Court emphasized the need for a case-by-case approach. Ibid. ("The point is that there is no precise formula or set of criteria which will determine every case mechanically and automatically."). That said, the Court acknowledged that there would be circumstances in which the "broader public interest" would be "so important" as to necessitate immunity even when compared with "local interests [that] may be great." Ibid.
In the application of its test, the Court determined that Rutgers, as a state university and instrumentality of the State, is entitled to a qualified immunity. Ibid. (explaining that in "performing an essential governmental function for the benefit *625 of all the people of the state, the Legislature would not intend that [Rutgers'] growth and development should be subject to restriction or control by local land use regulation"). The Court stressed that the immunity being recognized came with caveats in its exercise. First, the immunity is not "unbridled"; rather, the Rutgers Court instructed that immunity from land use controls may not "be **452 exercised in an unreasonable fashion so as to arbitrarily override all important legitimate local interests." Ibid. [3] (citing Washington Township v. Village of Ridgewood, 26 N.J. 578, 584-86, 141 A.2d 308 (1958) ). The Court also imposed a further requirement:
[E]ven if the proposed action of the immune governmental instrumentality does not reach the unreasonable stage for any sufficient reason, the instrumentality ought to consult with the local authorities and sympathetically listen and give every consideration to local objections, problems and suggestions in order to minimize the conflict as much as possible.
[ Id. at 154, 286 A.2d 697 (citing Bloomfield v. Highway Auth., 18 N.J. at 248, 113 A.2d 658 ).]
As applied to the facts in Rutgers, the Court concluded that it "fail[ed] to see the slightest vestige of unreasonableness [in the University's planned action] as far as Piscataway's local interests are concerned or in any other respect." Ibid. The Court noted that Rutgers presented the proposal to local authorities via its variance application so a form of fulsome consultation with local authorities took place. Ibid. Further, the Court rejected the idea that Piscataway's stated concern about the housing project's impact on the fiscal resources of the community (specifically the need to build more schools) could be considered "a legitimate local interest from any proper land use impact point of view." Ibid. The Court viewed Rutgers' planned action -- to promote the housing and welfare of its students -- to be substantively reasonable and consistent with its statutory charge. See ibid. The Court concluded that the Legislature "intended that the growth and development of Rutgers, as a public university for the benefit of all the people of the state, was not to be thwarted or restricted by local land use regulations" and declared the University, and specifically its proposed project, immune from the zoning restriction capping the number of units. Id. at 158, 286 A.2d 697.
**453 IV.
A.
Thus, Rutgers identified a number of principles that would govern whether an entity is entitled to claim immunity from local land use regulation. The Court counseled consideration of "the nature and scope of the instrumentality seeking immunity, the kind of function or land use involved, the extent of the public interest to be served thereby, the effect local land use regulation would have upon the enterprise concerned[,] and the impact upon legitimate local interests." Id. at 152-53, 286 A.2d 697.
With respect to the specific project for which immunity is sought, Rutgers requires a two-fold analysis. First, the substantive action planned by the entity claiming immunity from local land use control must itself be reasonable. Id. at 153, 286 A.2d 697. The determination as to *626 whether the planned project satisfies the reasonableness standard is distinct, yet not entirely disentangled from, the second condition required of a state governmental entity acting in furtherance of its statutory mission and claiming immunity from local land use control in connection with that action: The immune entity also has an obligation to respectfully hear and consider legitimate concerns raised by local authorities to minimize conflict between the two governmental authorities. Id. at 153-54, 286 A.2d 697. That its response to legitimate concerns may overlap with components of a reasonableness assessment reveals the intertwined nature of the inquiries in some instances.
B.
1.
Turning to the case before us, at the outset, we note that MSU is an entity that clearly, in planning its alteration to its campus roads in order to better serve its intra-campus traffic, was acting in an immune capacity, pursuant to its statutory authorization to control its property. Like Rutgers, MSU is a state university, **454 and N.J.S.A. 18A:64-7 grants the Board of Trustees of MSU with
the powers, rights and privileges that are incident to the proper government, conduct and management of the college, and the control of its properties and funds and such powers granted to [it] or reasonably implied, may be exercised without recourse or reference to any department or agency of the State, except as otherwise provided by this article or applicable law.
Similar language in the statute governing Rutgers was recognized in the Rutgers decision as conferring broadly autonomous governmental powers. See Rutgers, 60 N.J. at 158, 286 A.2d 697.
MSU, as an agency of the State, acts for the State generally when, in furtherance of its overall statutory educational mission, it determines to improve its campus roads (specifically here, Yogi Berra Drive) to better manage intra-campus traffic concerns for its students, faculty, employees, and guests. The function involved fits squarely within its statutory mission and its specific authority. Moreover, the public interest to be served supports that the Legislature intended for MSU to be free of local land use regulation in managing its internal road system so long as there is no asserted impact on non-state-owned public property. For such actions, MSU needs autonomy to act in the way that best serves its enterprise and its stakeholders, rather than to have to seek local land use entanglement, nay approval.
In sum, MSU is a state entity that enjoys the qualified immunity from local land use controls with respect to management of its own land and property that was recognized in Rutgers. We thus turn to review of the exercise of that immunity.
2.
In this matter, we are in substantial agreement with the judgment of the Appellate Division remanding this matter to the trial court for further proceedings. However, we modify the instruction given to the trial court on the required Rutgers analysis and, generally, how the judicial proceedings should be conducted.
**455 Here the Appellate Division's decision can be interpreted to have inadvertently conflated the two parts of the Rutgers analysis into one. For clarification's sake, we reaffirm the two parts to the analysis that must be applied on remand.
In order for the trial court to grant MSU the relief it seeks, the court first must assess the inherent reasonableness *627 of the MSU roadway plan in its entirety. See Rutgers, 60 N.J. at 152-53, 286 A.2d 697. When an off-site impact to the improvement on state-owned lands is asserted, review of the project must include review of its off-site impact. A state entity must be able to demonstrate the reasonableness of its planned action if challenged, as well as when it solicits judicial authority to compel coordinated action by a local governmental entity.
Separately, the trial court must also assess whether MSU reasonably consulted and took into consideration the legitimate concerns of the local governmental entities. As noted previously, consultation and consideration of important local concerns is necessary but it does not answer the distinct first question about the reasonableness of the project itself. See id. at 153-54, 286 A.2d 697. The consultation function is meaningful to the analysis, not merely procedural. Ibid.
We expect that any legislatively authorized State action should be able to satisfy, minimally, an examination for reasonableness to be a proper exercise of governmental action. Moreover, it is compatible with the expectation that coordination and cooperation between and among governmental agencies, even when differentiated by hierarchy, is in the public's best interest generally. See ibid.; cf. Garden State Farms, Inc. v. Bay, 77 N.J. 439, 455, 390 A.2d 1177 (1978) (noting same outside of Rutgers immunity context). Thus, on remand, in addition to the requirement set out below, the trial court must address both components to the analysis required under Rutgers, and the Appellate Division's instructions to the trial court are modified accordingly.
**456 C.
Public safety concerns require pause because they merit careful consideration. The local governmental entities here cite public safety concerns and voice apprehension about their ability to fulfill their own duty of care to members of the public, traveling on or along the county road, who may never have occasion to enter upon MSU property but who may be negatively affected by MSU's plan design and its effect on the intersection with the county road. How and where those concerns factor into the Rutgers analysis is a novel issue with respect to our law on the qualified immunity recognized in this area.
We recognize as significant the public interest inherent in a local government entity's reasonable concerns about the impact of an immune state entity's internal actions affecting public safety on non-state public property. In this instance, the public safety concerns were raised in connection with questioning the adequacy of the planning for the proposed roadway alterations and their impact on- and off-site of MSU property.
The safety issue focuses on drivers descending the incline of Yogi Berra Drive (presently solely an ingress with traffic moving only up the incline), with its planned curve and speed limit, and members of the public traversing the intersecting county road who would be affected by the descending drivers approaching the intersection. The local governmental entities have raised, facially, an important and legitimate planning concern about public safety. It is unlike the anticipated future impact on a community like the issue raised in the case concerning construction of service areas along the Parkway, where municipal authorities expressed concerns about speculative untoward incidents arising from motorists stopping at a rest area located within the community's borders. See Bloomfield v. Highway Auth., 18 N.J. at 248, 113 A.2d 658. In that case, the *628 projected fears were insufficient to rise to the level of a legitimate local concern to weigh against the authority and the immunity reposed in the Highway Authority. See id. at 248-49, 113 A.2d 658. **457 Regarding persons traveling the interior of the campus, MSU bears responsibility for its roads under its statutory authority. However, there is a distinct duty owed by other local governmental entities when a public safety concern could affect local public property and the members of the public using that property. In such situations, we are compelled to add an additional inquiry to the test articulated in Rutgers.
Simply put, a review by MSU and its experts asserting that it has reasonably addressed the public safety concern is not sufficient, standing alone, to protect general public safety and also the interests of the local governmental entities with regard to that local public safety concern. MSU is not legislatively authorized to act on issues of public safety on county roads as part of its delegated tasks. Cf. Holgate Prop. Assocs. v. Township of Howell, 145 N.J. 590, 594-95, 600-01, 679 A.2d 613 (1996) (noting environmental agency's statutory authority over use of composted "sludge-derived product" that preempted local officials from enforcing zoning and soil removal ordinances); Township of Cedar Grove v. Sheridan, 209 N.J. Super. 267, 270, 279-80, 507 A.2d 304 (App. Div. 1986) (addressing Commissioner of Department of Transportation's statutory authority over installation of traffic signal at state highway intersection despite opposition by township and residents).
Subject to the limitations contained in the Tort Claims Act, local governments owe a duty of care to the public regarding their roadways and ancillary public lands. See N.J.S.A. 59:4-6 (providing for and addressing scope of plan or design immunity); Birchwood Lakes Colony Club, Inc. v. Borough of Medford Lakes, 90 N.J. 582, 599, 449 A.2d 472 (1982) (noting that plan or design immunity not dependent on showing of reasonableness of design, but rather, in order to claim immunity, public entity must show that alleged dangerous condition was subject to government approval or in accordance with approved standards). The local governments here specifically owe a duty of care to the motorists and pedestrians at and around the county road's intersection with **458 Yogi Berra Drive.[4] Accordingly, the entities are acting well within their scope of responsibility in raising, in good faith, what they claim is a public safety concern about the proposed intersection alterations.
In the circumstances presented here, where a facially legitimate public safety concern is raised about an immune entity's planned improvement to lands, which would have a direct impact on non-state-owned property, we will require a showing by the immune entity that its planning has reasonably addressed the public safety concern. The local governments can argue otherwise regarding the improvement's impact on off-site public property and whether public safety concerns have been reasonably addressed, but the court will make the ultimate determination. We will require a discrete judicial finding that MSU's proposed action reasonably satisfies public safety concerns. Such a finding comes in addition to the otherwise typical review of an immune entity's modification to its own property. A judicial finding is necessary to properly protect the general public and to fairly *629 provide an independent judicial determination on which other public entities, who will remain responsible for future activity at the changed intersection, may rely.
We do not suggest that protracted trial proceedings are necessary whenever a public safety claim is advanced as a reason for questioning immunity from local land use regulations. In the instant remand, we leave to the sound discretion of the trial court whether this matter may proceed along the lines of a summary proceeding or whether the taking of live testimony or receipt of other evidence is necessary. See, e.g., R. 4:67. To be clear, an immune entity is not to be subjected to a requirement of submission to planning board review or the like. We hold only that a **459 public entity must show that its planning has reasonably addressed public safety concerns identified by local governments as having a direct impact on non-state public property and that a judicial finding as to the reasonableness of the public entity's action with respect to public safety shall be required.
Accordingly, on the remand of this matter, we add that in circumstances such as these, a judicial finding shall be required on the reasonableness of the planned MSU project, specifically as it affects public safety regarding the intersection with the county road.
V.
The judgment of the Appellate Division is affirmed as modified by this opinion.
CHIEF JUSTICE RABNER and JUSTICES PATTERSON, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in JUSTICE LaVECCHIA's opinion. JUSTICE ALBIN did not participate.

The County did not petition for certification but did move to participate. We allowed the County to file its Appellate Division brief and participate in oral argument.

Rutgers argues that although this case was properly brought in the Law Division because it originated as an action by MSU against the County, once the City intervened the case became reviewable directly in the Appellate Division as an appeal of state agency action.
Rutgers maintains that, in the setting of appellate review of state agency action, the applicable standard reviews only for arbitrary and capricious action. Rutgers urges us to hold that land use disputes involving challenges to claims of immunity under Rutgers should generally follow the typical appellate path for judicial review of state agency action.

As an example, the Court posited that "it would be arbitrary[ ] if the state proposed to erect an office building in the crowded business district of a city where provision for off-street parking was required, [and] the state [chose] not to make some reasonable provision in that respect." Id. at 153-54, 286 A.2d 697.

While providing certain immunities, the Tort Claims Act, N.J.S.A. 59:1-1 to 12-3, will factor prominently for those governmental entities with respect to their responsibility in the event the current intersection is changed and an accident occurs.